Thomas Earl HENDERSON, Jr., et al., Plaintiffs-Appellants,

v.

FORT WORTH INDEPENDENT SCHOOL DISTRICT and John R. Leatherbury et al., Defendants-Appellees.

No. 75–2361.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1976.

Arthur J. Brender, Jr., Don Gladden, Ft. Worth, Tex., for plaintiffs-appellants.

David B. Owen, Cecil A. Morgan, Ft. Worth, Tex., for defendants-appellees.

Before BELL, THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

The instant appeal presents a challenge to the local statutory requirement that candidates for the Fort Worth, Texas school board be "qualified voters" in the district for a period of three years. Appellants sought declaratory and injunctive relief below on the theory that the candidacy requirement violates the Equal Protection Clause of the Fourteenth Amendment and unduly burdens the right of interstate travel. 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343, 2201, and 2202. Appellants Henderson and Puente desired places on the ballot for a school board election scheduled and held in March, 1974. Appellant Boles is a registered voter in the district who desires to cast her vote for both Henderson and Puente. The district court rejected appellants' equal protection and right to travel arguments. It thus refused to compel school board officials to place the names of Henderson and Puente on the ballot for the March, 1974, election or declare unconstitutional that portion of the statute specifying the three year "qualified voter" requirement. The next scheduled election for school board in Fort Worth is in April, 1976. Both appellants Henderson and Puente have expressed their desire to participate as candidates in that election. Resolution of appellants' challenge requires two separate inquiries: (1) Is the controversy moot at this point in time, and (2) does the three year "qualified voter" requirement comport with the applicable constitutional standards?

*Mootness*

Appellant Henderson has been a "qualified voter" in the Fort Worth School District since September 15, 1973. Failing to satisfy the three year requirement, Henderson was denied a place on the ballot in the election held in March, 1974. In the next school board election, scheduled for April, 1976, Henderson will still not qualify under the statute, though he has expressed by affidavit his intention to run for school board at that time. While the 1974 election has been held and the court cannot grant retrospective relief as to that election, the instant case is not moot. *See American Party v. White,* 1974, 415 U.S. 767, 770 n. 1, 94 S.Ct. 1296, 1301, 39 L.Ed.2d 744; *Rosario v. Rockefeller,* 1973, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 1249, 36 L.Ed.2d 1; cf. *Sosna v. Iowa,* 1975, 419 U.S. 393, 95 S.Ct. 553, 557, 43 L.Ed.2d 532. It can be assumed that since appellant Henderson will still not qualify under the statute in April, 1976, school board officials will again deny him access to the ballot as a candidate. *See Storer v. Brown,* 1974, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714; *Moore v. Ogilvie,* 1969, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1. As between Henderson and the Fort Worth School Board and its officials there exists a live controversy over his place on the ballot in April, 1976, and the requirement of Article III is met. *See Powell v. McCormack,* 1969, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491; *Sibron v. New York,* 1968, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917; *Liner v. Jafco,* 1964, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394, 11 L.Ed.2d 347. Appellant Henderson's case is not moot, and on that basis we proceed to the merits of his claim.[1]

1. Appellant Puente presents a more difficult question. He has been a "qualified voter"

since November, 1971, and though denied access to the ballot in the 1974 election, he will

## Equal Protection

Section 7 of Chapter 230, Local and Special Laws, Acts of the 39th Legislature, 1925, provides in pertinent part that persons offering themselves as candidates for school board in Fort Worth

> must have been freeholders in said district for at least one year, and qualified voters of said district for a period of three years . . ..

The district court held and appellees concede that the freeholder provision of section 7 is unconstitutional in light of the decision in *Turner v. Fouche,* 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567. The district court further held, however, that the three year "qualified voter" requirement did not violate the Equal Protection Clause or infringe on appellants' rights to travel. Appellants limit their argument in this court to equal protection grounds.

The district court analyzed section 7 as serving a dual function: prescribing a minimum age requirement and a durational residency requirement. Appendix at 79–80. The district court's assessment

of section 7 is accurate—within limits. When enacted in 1925, the statute was certainly viewed by the Texas Legislature as an efficient device for ensuring that persons seeking a school board position be familiar with the workings of the board and the concerns of the district, and by reason of that familiarity possessed of a modicum of expertise. However, section 7 does not by its terms prescribe three years residency within the district or stipulate a minimum age for school board candidates. The statute goes farther than that; it requires a candidate for school board in Fort Worth to have been a registered voter in the district for three years. This follows from the definition of "qualified voter" contained in the Texas Election Code, which provides that no person shall be so qualified unless he has registered in accordance with the provisions of the Code.[2] Under the current Texas Election Code, voter registration is effective for a three year period,[3] and if a registered voter does in fact vote during that three year period, his registration is automatically renewed for another three year period.[4] Therefore, to qualify as a

---

fulfill the statutory requirement for candidacy in the election scheduled for April, 1976. On the basis of *Moore v. Ogilvie,* 1969, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1, it would appear that appellant Puente's claim falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. *See American Party v. White,* 1974, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744; *Storer v. Brown,* 1974, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714; *Dunn v. Blumstein,* 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274; *cf. Richardson v. Ramirez,* 1974, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551. However, the recent decision of *Sosna v. Iowa,* 1975, 419 U.S. 393, 95 S.Ct. 553, 558–59, 43 L.Ed.2d 532, forces the conclusion that for failure to bring his suit as a class action, appellant Puente's challenge is moot. *But cf.* Comment, 88 Harv. L.Rev. 373, 388 (1974)

Appellant Boles is a resident and qualified voter of the Fort Worth Independent School District who wishes to cast her vote for appellants Henderson and Puente. The district court apparently assumed standing in appellant Boles to challenge the candidacy requirement, Appendix at 85, and appellees do not challenge her standing in this court. Since

this case is not moot as to appellant Henderson, and the court may proceed to the merits on that basis, *cf. American Party v. White,* 415 U.S. at 770 n. 2, 94 S.Ct. at 1301, it is not strictly necessary to consider the standing and mootness issues as they bear on appellant Boles. However, appellant Boles as a voter wishing to support appellant Henderson clearly has standing, *see Bullock v. Carter,* 1972, 405 U.S. 134, 136, 142–44, 92 S.Ct. 849, 852, 855–56, 31 L.Ed.2d 92, and since the case is not moot as to appellant Henderson, it should not be considered moot as to appellant Boles. *See Storer v. Brown,* 415 U.S. at 727 n. 2, 94 S.Ct. at 1277.

2. 9 V.T.C.A., Election Code, art. 5.02 (Supp. 1975). Article 5.02 further provides that eligibility for registration is contingent on residence for one year within the state. Thus, for a person moving into Texas from another state, the minimum period before attaining eligibility as a candidate would be four years, assuming proper registration.

3. 9 V.T.C.A., Election Code, art. 5.11a (Supp. 1975).

4. 9 V.T.C.A., Election Code, art. 5.18b (Supp. 1975). Articles 5.11a and 5.18b were enacted

school board candidate in Fort Worth, a person must have registered to vote at least once at some point three years prior to the election in which he desires to offer himself as a candidate. The importance of this distinction—between residency and registration—is no more amply demonstrated than by the fact that appellant Henderson has been a resident of the Fort Worth School District for thirteen years, but will still be ineligible as a candidate in the 1976 election. With the operative effect of section 7 thus in mind,[5] it is appropriate to address the merits of the equal protection challenge.

■ The initial step in any equal protection case is determination of the appropriate standard of review under which the statutory classification in question must be judged. The scheme embodied by section 7 divides the residents of the Fort Worth School District into two camps. The first consists of all residents who are not registered to vote or who have been registered to vote for a period less than three years. The second consists of all residents who have been registered voters for a period of three years or more. Only the latter group of residents is eligible to run for school board. Relying on the decision in *Bullock v. Carter,* 1972, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92, the district court held that section 7 should be tested under the traditional "rational relationship" formula, *see Dandridge v. Williams,* 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; *McGowan v. Maryland,*

in response to the decision in *Beare v. Smith,* S.D.Tex.1971, 321 F.Supp. 1100, *aff'd, Beare v. Briscoe,* 5th Cir. 1974, 498 F.2d 244, which invalidated the annual voter registration requirement previously employed in Texas. The registration scheme condemned in *Beare* called for annual registration of all voters during a four month period beginning in October and ending in January of the following year and was based on a state constitutional provision, Tex.Const. art. VI, § 2 (1966 Amendment), and the predecessor statute to article 5.11a. The court below erroneously relied on the state constitutional provision at issue in *Beare* for the proposition that registration is not required to attain the status of "qualified voter" within the meaning of article 5.02 of the Election Code. Appendix at 77 n. 6. Notwithstanding doubts as to the continuing validity of that provision of the state constitution in light of the decision in *Beare,* its unambiguous wording indicates that registration is necessary to become a "qualified voter." This conclusion is further reinforced by articles 5.11a and 5.18b of the current Election Code which clearly contemplate registration as a predicate to status as a "qualified voter."

5. Another feature of section 7 that bears on the equal protection issue is the statute's failure to specify that an eligible candidate has been a "qualified voter" for the three years *next preceding* the election in which he desires to run. Under the statute as drafted, it is apparently possible for a person to be a "qualified voter" for three years, move out of the school district for any number of years, and upon his return be immediately eligible as a school board candidate. The Texas courts have not been called upon to construe section

7 in light of this possibility, and the statute's construction under those circumstances is an original matter in this litigation. It may be that a Texas court would read the "next preceding" language into section 7, but the opinion of the court below does not address this issue. However, it should be noted that the absence of this language places section 7 out of the mainstream since other Texas statutes and constitutional provisions routinely include this language or its equivalent in specifying residence and other temporally oriented requirements. *See, e. g.,* 9 V.T.C.A., Election Code, art. 5.02 (Supp.1975) (one year residency requirement for voter registration); 9 V.T. C.A., Election Code, art. 1.05 (Supp.1975) (one year residency requirement for candidates for state offices unless otherwise specified by statute or constitutional provision); Tex.Const., art. III, § 6 (eligibility for state senator); Tex. Const., art. III, § 7 (eligibility for state representative); Tex.Const., art. IV, § 4 (eligibility for governor); Tex.Const., art. IV, § 16 (eligibility for lieutenant governor). Regardless of the construction that can be placed on section 7, the instant case is not one where any fair interpretation of the statute would moot the federal constitutional question, *see Zwickler v. Koota,* 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; *United States v. Livingston,* E.D. S.C.1959, 179 F.Supp. 9, 12–13, *aff'd, Livingston v. United States,* 1960, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719; *Edwards v. Sammons,* 5th Cir. 1971, 437 F.2d 1240; *Hill v. City of El Paso,* 5th Cir. 1971, 437 F.2d 352. However, we proceed to decision on the assumption favorable to appellees that section 7 implicitly requires "qualified voter" status for the three years next preceding the election in question.

1961, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, rather than the more stringent "strict scrutiny" standard, *see San Antonio School Bd. v. Rodriquez,* 1973, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16; *Bullock v. Carter, supra; Shapiro v. Thompson,* 1969, 394 U.S. 618, 89 S.Ct. 1332, 22 L.Ed.2d 600, or the suggested intermediate test of "substantial relationship in fact." *See Reed v. Reed,* 1971, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225; *Frontiero v. Richardson,* 1973, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (plurality opinion); *Aguayo v. Richardson,* 2 Cir. 1973, 473 F.2d 1090, 1108–10; *City of New York·v. Richardson,* 2 Cir. 1973, 473 F.2d 923, 930–31; *but compare Village of Belle Terre v. Borass,* 1974, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797. We are of the view that the district court erred in its choice of the appropriate standard of review. Though prolix, that portion of the opinion in *Bullock v. Carter* relied on by the district court warrants repetition in substantial part.

> The initial and direct impact of filing fees is felt by aspirants for office, rather than voters, and *the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review.* However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. *Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. McDonald v. Board of Election,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Texas does not place a condition on the exercise of the right to vote, nor does it quantitatively dilute votes that have been cast. Rather, the Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. *The existence of such barriers does not of itself compel close scrutiny.* Compare *Jenness v. Fortson,* 403 U.S. 431, 91

S.Ct. 1970, 29 L.Ed.2d 554 (1971), with *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). *In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.* [emphasis added].

405 U.S. at 142–44, 92 S.Ct. at 855–56, 31 L.Ed.2d at 99–100.

■ As the quoted language indicates, the mere existence of barriers standing in the path of potential candidates does not automatically require strict scrutiny of the statutory scheme under attack—though the Court in *Bullock v. Carte:* did subject the Texas filing fee scheme to strict scrutiny and find it wanting. Rather, the extent and nature of the impact on voters, examined in a realistic light, is the key to the matter. The Court's comparison citation to *Jenness v. Fortson,* 1971, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554, and *Williams v. Rhodes,* 1968, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24, provides guidance. In *Williams* the Court struck down a state election scheme that provided the Democratic and Republican parties with a virtual monopoly on access to the ballot. In *Jenness,* on the other hand, the Court upheld a requirement that independent candidates submit petitions bearing names equal in number to five per cent of the voters in the last gubernatorial election in order to obtain a place on the ballot. The difference in result in *Jenness* and *Williams* hinged on the degree by which potential candidates were excluded from the ballot. Other than participation in the Democratic or Republican primary, the independent candidates in *Williams* were provided no alternative route to a place on the ballot in the general election. The petition alternative in *Jenness,* which the Court found reasonable in light of the strong state interest in a manageable ballot, allowed independent candidates demonstrating at least some political support a place on the ballot. The barrier erected by section 7 falls closer to *Williams* than to *Jenness.* It is absolute in its operation. No exception is made for expertise, fa-

miliarity, or the extent of political support in fact possessed by a potential candidate. Not unlike the exorbitant filing fees in *Bullock v. Carter,* section 7 denies access to what must be assumed is a significant number of potential school board candidates, and on that basis the statute's impact on voters is substantial. Indeed, when examining less restrictive, but somewhat analogous durational requirements, a majority of courts have employed a standard of strict scrutiny. *See Chimento v. Stark,* 353 F.Supp. 1211 (D.N.H.), *aff'd without opinion,* 1973, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39; *Stapleton v. Clerk for City of Inkster,* 311 F.Supp. 1187 (E.D.Mich.1970); *Hadnott v. Amos,* 320 F.Supp. 107 (M.D.Ala. 1970), *aff'd without opinion,* 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971); *Bolanowski v. Raich,* 330 F.Supp. 724 (E.D.Mich.1971); *Green v. McKeon,* 335 F.Supp. 630 (E.D.Mich.1971); *Mogk v. City of Detroit,* 335 F.Supp. 698 (E.D. Mich.1971); *McKinney v. Kaminsky,* 340 F.Supp. 289 (M.D.Ala.1972); *Wellford v. Battaglia,* 343 F.Supp. 143 (D.Del.1972); *Draper v. Phelps,* 351 F.Supp. 677 (W.D. Okl.1972). We conclude that section 7 must withstand strict scrutiny.

When subjected to strict scrutiny, a statute or legislative scheme must be shown necessary to promote a compelling state interest. *Shapiro v. Thompson, supra; Bullock v. Carter, supra.*

> Thus phrased, the constitutional question may sound like a mathematical formula. But legal "tests" do not have the precision of mathematical formulas. The key words [necessary to promote a compelling governmental interest] emphasize a matter of degree: that a heavy burden of justification is on the State, and that the statute will be closely scrutinized in light of its asserted purposes.

*Dunn v. Blumstein,* 1972, 405 U.S. 330, 338, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274. The state is clearly vested with the power, derived from the Tenth Amendment, to prescribe reasonable citizenship, age, and residency requirements on the availability of the ballot, *Kramer v. Union Free School District,* 1969, 395 U.S. 621, 625, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583; *cf. Carrington v. Rash,* 1965, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675, and the power to prescribe reasonable qualifications extends to candidates for office. *See Storer v. Brown, supra; American Party v. White, supra; Bullock v. Carter, supra; Jenness v. Fortson, supra.* The argued justification for section 7 is the state's interest in a ballot composed of knowledgeable and qualified candidates for the increasingly complex job of school board member. However, voter registration for a period of three years is, at best, a crude index of the capabilities of a potential candidate. The background, experience, and political views of the potential candidate are, among others, the indicia of merit and capability. No one contends, or could, that the state is empowered to impose qualifications or requirements in these areas. On the contrary, the power to make necessarily subjective discriminations on the basis of background, experience, or political philosophy rests with the voters of the Fort Worth School District. It can be assumed that opposing candidates will bring deficiencies in any of these areas to the attention of the voters.

Appellees argue from *Chimento v. Stark, supra,* that the state can, without violating the Equal Protection Clause, impose a three year "qualified voter" requirement. In *Chimento* a three-judge court upheld after strict scrutiny a seven year residency requirement imposed on candidates for governor of New Hampshire. The Supreme Court affirmed without opinion. *Chimento* is distinguishable from the instant case in two important respects. First, and as pointed out by the court in *Chimento,* plaintiff there was eligible for a large number of public offices below that of governor. Thus, he was not completely barred from offering himself for service in state government. In the instant case, however, the position of school board trustee is the only one available for a person wishing to inject him or herself into the management and control of the local

school district. There are no lesser offices available to satisfy this particular desire to serve the public. Moreover, the issue as drawn in *Chimento* was residency, not registration. As the situation of appellant Henderson demonstrates, the difference between the former and the latter can be crucial.[6]

We hold that the three year "qualified voter" requirement of section 7 goes beyond the necessary power of the state to prescribe minimal candidate qualifications and denies appellant Henderson rights secured by the Equal Protection Clause of the Fourteenth Amendment. Accordingly, we reverse and remand for entry by the district court of an order consistent with our holding.

---

**6.** The court in *Chimento* additionally emphasized the fact that the seven year residency requirement had been a fixture in the state constitution since 1784. 353 F.Supp. at 1217. By comparison, section 7 is something of a newcomer, having been first enacted in 1925. Tradition and custom are, of course, not touchstones in the resolution of an equal protection challenge. However, they can aid in placing the issue in context. Looking to other provisions of the Texas Election Code and the Texas Constitution, it is apparent that the burden imposed by section 7 is heavier than that faced by candidates for governor, *see* Tex. Const., art. IV, § 4 (five year residency requirement, no voter registration requirement), lieutenant governor, *see* Tex.Const., art. IV, § 16 (same as governor), state senator, *see* Tex.Const., art. III, § 6 (same as governor), state representative, *see* Tex.Const., art. III, § 7 (two year residency requirement, no voter registration requirement), or any other state office, *see* 9 V.T.C.A., Election Code, art. 1.05 (Supp.1975) (one year residency requirement for candidates for state office unless otherwise specified by statute or constitutional provision). The anomalous character of section 7 is clear, even when judged with the benefit of tradition and custom.