Robert N. DAVES, Plaintiff,

v.

CITY OF LONGWOOD, and Onnie R. Shomate, Defendants.

No. 76–499–Orl–Civ–R.

United States District Court,
M. D. Florida,
Orlando Division.

Nov. 29, 1976.

---

John B. Liebman, of Carlton, Fields, Ward, Emmanuel Smith & Cutler, P. A., Orlando, Fla., for plaintiff.

Ned N. Julian, Jr., Franklin C. Whigham, of Stenstrom, Davis & McIntosh, Sanford, Fla., for defendants.

## ORDER AND MEMORANDUM OPINION

REED, District Judge.

This cause came before the court on a motion for preliminary injunction to enjoin the holding of the forthcoming elections of the City of Longwood, Florida, without the inclusion of the plaintiff's name on the ballot for city council. During the hearing, counsel for the plaintiff asked the court to consolidate the hearing with the trial on the merits. Because of the shortness of time between the preliminary hearing and the date set for the election, the court has concluded that consolidation is appropriate and will treat the hearing on the application for preliminary injunction as the trial on the merits. See Rule 65(a)(2), Fed.R.Civ.P.

The plaintiff sues the City of Longwood and the City Clerk. The relief sought is a declaratory judgment declaring the one year residency requirement for candidacy for the city council of Longwood to be unconstitutional and a mandatory injunction requiring the plaintiff's name to be included among the list of qualified candidates for city council election scheduled for 7 December 1976.

The one year residency requirement is embodied in a 1969 special act passed by the Florida Legislature relating to the City of Longwood. It is stipulated by the plaintiff and the defendants that the plaintiff is qualified to run for the city council except for the residency requirement. According to his complaint, the plaintiff moved to the City of Longwood on 1 April 1976.

It should be noted that the statute in question also requires as a qualification for becoming a candidate the ownership of real property within the city. This requirement is not in issue before the court. The city has evidently abandoned property ownership as a qualification. The only issue before the court is whether or not the statute in question may constitutionally require a one year residency within the city after qualifying to vote therein as a qualification on one's right to seek election to the position of city council.

Longwood is a municipality in Seminole County, Florida. According to the testimony of the City Clerk, the city has a population of 6,373 persons which includes 2,706 registered voters. The city council consists of five members who are elected by the entire voting populace of the city. A council member's term is two years and the salary is $2,600.00 per year. The city council is the legislative branch of the city's government. It establishes the city's budget and votes on other matters of legislative concern. The budget which has been set for its current fiscal year which began on 1 October 1976 is $600,000.00.

While the jurisdictional allegations in the complaint are not such as to indicate strict compliance with the Rules of Civil Procedure, it appears to the court from the evidence and the allegations in the complaint that the court has jurisdiction over the

cause as to the City of Longwood under 28 U.S.C. § 1331. Because of the size of the budget and the revenues that could be generated over an extended period of service on the city council, it is reasonable to assume that the amount in controversy exceeds the sum of $10,000.00. Additionally the court has jurisdiction over the subject matter, to the extent that it relates to the City Clerk, under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

The issue presented to the court in more specific terms is whether or not the statute referred to above, to the extent that it requires one to be a resident of the City of Longwood for a period of one year as a condition to becoming a candidate for city council, denies the plaintiff equal protection of the law. The statute requires that the candidate be qualified to vote under the general election laws of the State of Florida, be registered to vote in the City of Longwood, and thereafter a one year residency. The general election laws of the State of Florida do not require a durational residency requirement as a condition to registering to vote. See § 97.041, F.S.A. Therefore, the relationship between the registration requirement in the statute under attack and the general election laws of Florida does not extend the durational residency requirement for a candidate. Presumably a newcomer to the City of Longwood, if he were a permanent resident of the State of Florida, could immediately register to vote under the general election laws of Florida and thus become a qualified and registered voter of the City of Longwood and a qualified candidate one year later. The only exception to this would occur if the individual sought to register when the voter registration books are closed. (Florida law permits the books to be closed for a period of thirty days prior to general elections and five days thereafter. See § 98.-051(3), F.S.A.)

The initial problem facing the court is the appropriate standard by which the statute should be reviewed. The traditional standard employed in equal protection cases is expressed in *McGowan v. Maryland*, 1961, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393. There the Court held that the equal protection clause is violated only if the statutory classification rests on ". . grounds wholly irrelevant to the achievement of the State's objective. . . . A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . ."

A different standard for review has been applied in cases where the questioned legislation seriously encroached on what might be considered fundamental rights of citizenship or which created for legislative purposes what are thought to be suspect classifications. Where either of these factors is present a more stringent standard may be applied to measure the constitutionality of the statute in question. For example in *Shapiro v. Thompson*, 1969, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600, the Court held that any classification ". . . which serves to penalize the exercise of that right (the right to move from state to state), *unless shown to be necessary* to promote a compelling governmental interest, is unconstitutional . . .". (Emphasis added.) The requirement to show necessity under that standard is so difficult to meet that its application conceivably could judicially annul a large segment of the legislature's work product. Hence caution is indicated in the finding of the predicate to support the standard. The Fifth Circuit has rejected the use of this method of review in a number of recent cases. See *Tyler v. Vickery*, CA5, 1975, 517 F.2d 1089 (challenge by blacks to the constitutionality of the Georgia bar examination); *Muzquiz v. City of San Antonio*, CA5, 1975, 520 F.2d 993 (attack by city police and firemen on city operated pension plan) and *Parrish v. NCAA*, CA5, 1975, 506 F.2d 1028 (student athletes' challenge to NCAA rule limiting athletic scholarships).

In the case of *Bullock v. Carter*, 1972, 405 U.S. 134, 143, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92, the Supreme Court seemed to apply a modified version of the *Shapiro* rule to a Texas statewide filing fee system which had the effect of eliminating from

the primary ballot candidates who were unable to pay substantial qualifying fees. There the Court said:

"Because the Texas filing-fee scheme has a real and appreciable impact on the exercise of the franchise, and because this impact is related to the resources of the voters supporting a particular candidate, we conclude, as in Harper, that the laws must be 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster."

The Court indicated, however, that not every statutory limitation on the right to run requires a review by such a stringent standard.

The turning point of the *Bullock* case was the impact which the fee system had on candidates and their supporters because of their inability to pay. Thus the *Bullock* case may be looked upon as one involving a suspect classification.

In the case of *Henderson v. Fort Worth Independent School District*, 1976, 526 F.2d 286, 292, the Fifth Circuit had before it a local requirement that a candidate for the Fort Worth School Board be a qualified voter resident in the district for a period of three years. Under Texas law at the time of the decision one was required to be a resident in the state for one year before he became eligible for registration. The court, therefore, concluded that a person moving into Texas from another state would be required to wait a minimum period of four years before qualifying as a candidate for the school board. The Fifth Circuit applied a strict standard of review and held the statute unconstitutional. The court said:

". . . section 7 denies access to what must be assumed is a significant number of potential school board candidates, and on that basis the statute's impact on voters is substantial. . . ."

The statute here in question, like that in the *Henderson* case, does impose registration as a requirement, but that requirement does not operate to extend the one year period of residency as did the analogous requirement in *Henderson*.

The present statute, unlike that involved in the *Bullock* case, does not impact differently on one economic group than on another. Nor does the statute impose such a lengthy period of residency that it may be presumed to preclude a substantial number of potential candidates and thus impact significantly on the registered voters of the city. Hence the statute creates no suspect classification. The imposition of a reasonable residency requirement as a qualification for candidacy to a significant office does not interfere with fundamental rights. As the Fifth Circuit recently pointed out, the Constitution itself adopts certain durational residency requirements for various offices. See *Woodward v. City of Deerfield Beach*, CA5, 1976, 538 F.2d 1081. This court, therefore, concludes that the statute should be reviewed by the traditional standard. That is to say the statute should be upheld if it bears a reasonable relationship to a legitimate governmental interest.

A residency requirement such as here in question serves reasonably to assure that the candidate will be a bona fide resident of the city he seeks to represent, will have been there long enough to know the issues confronting the city, and will be known by the voters. To promote these qualities in a candidate is a legitimate objective of the state. The residency requirement reasonably tends to secure their attainment. The statute is, therefore, constitutional insofar as the residency requirement is concerned.

For the foregoing reasons, the plaintiff has failed to demonstrate his entitlement to relief and the complaint is dismissed with prejudice.