Stephen E. JONES, et al., Plaintiffs,

v.

Governor George W. BUSH, et al., Defendants.

No. Civ. A. 300–CV–2543–D

United States District Court, N.D. Texas, Dallas Division.

Dec. 1, 2000.

William K. Berenson, Fort Worth, TX, James A. Jones, Jones & Associates, P.C., Dallas, TX, Sanford V. Levinson, Austin, TX, and Charles W. McGarry, Dallas, TX, for plaintiffs.

Harriet E. Miers, Roger B. Cowie, and Evan E. Fitzmaurice, of Locke Liddell & Sapp, LLP, Dallas, TX, for defendant Governor George W. Bush.

Barry F. McNeil, Robin P. Hartmann, and Stacy L. Brainin of Haynes & Boone, LLP, Dallas, TX, and David Aufhauser, Paul Rauser, and Alex Romain of Williams & Connolly, Washington, DC, for defendant Richard B. Cheney.

John Cornyn, Attorney General of Texas, Andy Taylor, First Assistant Attorney General, and Brent A. Benoit, Special Assistant Attorney General, Austin, TX, for defendants Ernest Angelo, et al.

Lawrence A. Caplan, Boca Raton, FL, for himself and Concerned Citizens for the

Upholding of our National Constitution, as amicus curiae in support of plaintiffs.

FITZWATER, District Judge.

This is an action by three Texas registered voters who allege that Richard B. Cheney ("Secretary Cheney"), nominee of the Republican Party for Vice President of the United States, is an "inhabitant" of the state of Texas, and that under the Twelfth Amendment to the United States Constitution, members of the Electoral College from the state of Texas ("Texas Electors") are prohibited from voting for both Governor George W. Bush ("Governor Bush") for the office of President of the United States and for Secretary Cheney for the office of Vice President. Plaintiffs seek a preliminary injunction to prevent the Texas Electors from casting their votes in favor of both Governor Bush and Secretary Cheney. Defendants move to dismiss, contending that plaintiffs lack standing, that their suit presents a nonjusticiable political question, and that they have failed to state a claim on which relief can be granted. Because plaintiffs do not have standing to sue, the court grants defendants' motion to dismiss. Given the importance of entering a ruling that will assist the parties in obtaining full appellate review in the short period that remains before the Electoral College votes on December 18, 2000, the court reaches the merits of plaintiffs' preliminary injunction application and denies it. The court holds that plaintiffs have failed to show a substantial likelihood of success on their contention that Secretary Cheney has been at some point since July 21, 2000, or will be on December 18, 2000, an inhabitant of the state of Texas, within the meaning of the Twelfth Amendment.[1]

## I

The Twelfth Amendment provides, in relevant part:

The Electors shall meet in their respective states, and vote by ballot for President and Vice–President, one of whom, at least, shall not be an inhabitant of the same state with themselves[.]

U.S. Const. amend. XII. Plaintiffs sue Governor Bush, Secretary Cheney, and the 32 Texas Electors, contending that, under the Twelfth Amendment, the Texas Electors may not vote for Governor Bush for the office of President of the United States and for Secretary Cheney for the office of Vice President of the United States because both are inhabitants of the state of Texas.[2] In their first claim for relief plaintiffs seek a judgment under 28 U.S.C. § 2201 declaring *inter alia* that the 32 electoral votes of the Texas Electors may not be cast for both Governor Bush and Secretary Cheney. In their second claim for relief, plaintiffs seek a preliminary injunction enjoining the Texas Electors from casting their votes in the Electoral College on December 18, 2000 in favor of both Governor Bush and Secretary Cheney, and enjoining all defendants from permitting any of the Electors to cast any of their votes in favor of either Governor Bush and Secretary Cheney, or from certifying to the United States Congress, Texas Secretary of State, or any other person, agency, media, or entity that the votes can be or were cast in their favor.

Plaintiffs' preliminary injunction application is before the court under the procedure permitted by Fed.R.Civ.P. 43(e) and will be decided on the papers without an evidentiary hearing. *See, e.g., FSLIC v. Dixon,* 835 F.2d 554, 558–59 (5th Cir.1987); *E.E. Maxwell Co. v. Arti Decor, Ltd.,* 638 F.Supp. 749, 751 n. 3 (N.D.Tex.1986) (Fitzwater, J.). Defendants' motions to dismiss are before the court on accelerated briefing.[3]

1. As permitted by Fed.R.Civ.P. 52(a), the court sets forth in this opinion and order its findings of fact and conclusions of law.

2. It is undisputed that Governor Bush is an inhabitant of Texas.

3. The court does not reach defendants' motions to the extent they contend that plain-

## II

Defendants move to dismiss, contending that plaintiffs lack standing to bring this lawsuit. The court agrees.[4]

The requirement that a plaintiff have standing to sue involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To satisfy the requirements of Article III of the Constitution, plaintiffs must show, at an "irreducible constitutional minimum," that they have "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant[s], and that the injury will likely be addressed by a favorable decision." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). If plaintiffs meet the constitutional requirements, the court's exercise of jurisdiction must also satisfy the "prudential considerations that are part of judicial self-government." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.[5]

Plaintiffs describe their injury from the Texas Electors' impending alleged violation of the Twelfth Amendment as a denial of "their constitutional rights." Ps. Am.Compl. ¶ 49. Specifically, they posit that they have "a right, as do all citizens of the United States, for the election for President and Vice–President in the Electoral College to be held in strict accordance with the Constitution of the United States and all laws governing the conduct of elections." *Id.* at ¶ 55. Plaintiffs also assert a right "to protect the interests of the non-defendant candidates for President and Vice–President" who are impacted "because the votes of the defendant Electors are necessary for defendants Bush and Cheney to achieve a majority of the Electoral College." Ps.Resp.Br. at 3–4.[6] Finally, they argue that the threatened Twelfth Amendment violation infringes their right to cast a "meaningful vote." *Id.* at 4.

To satisfy the requirements of Article III, an injury in fact must be "concrete . . . and actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted). Moreover, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1, 112 S.Ct. 2130. Plaintiffs'

---

tiffs' suit presents a non-justiciable political question. Likewise, the court does not address the assertion of Governor Bush and Secretary Cheney that the complaint fails to state a claim on which relief can be granted. The court cannot grant Rule 12(b)(6) relief because, to do so, it would be required to consider matters outside the pleadings and convert the motion into one for summary judgment. This would obligate the court to comply with procedural safeguards that it cannot accomplish within the time available under the accelerated schedule that applies in this case. *See, e.g., Isquith v. Middle South Utils., Inc.,* 847 F.2d 186, 195 (5th Cir.1988) (noting that when motion to dismiss is converted into motion for summary judgment, nonmovant is entitled to procedural safeguards of Rule 56, one of which is ten days notice).

**4.** To facilitate the expedited schedule set in this case, the court in its discretion precluded plaintiffs from filing a reply brief in support of their preliminary injunction application

and defendants from filing a reply brief in support of their motions to dismiss. *See Solomon v. Godwin & Carlton, P.C.,* 898 F.Supp. 415, 416 n. 2 (N.D.Tex.1995) (Fitzwater, J.). To the extent that defendants' briefs in opposition to plaintiffs' preliminary injunction application argue grounds in support of their motions to dismiss, the court has not considered these arguments in deciding the dismissal motions. Because it has not, the court denies as moot plaintiffs' December 1, 2000 motion to strike portions of the briefs of defendants.

**5.** Because the court holds below that plaintiffs do not satisfy the constitutional requirements to maintain this action, the court need not address whether prudential concerns affect the exercise of jurisdiction.

**6.** "Ps.Resp.Br." refers to plaintiffs' November 29, 2000 response to defendants' motions to dismiss. The court will refer to their November 29, 2000 brief in support of their preliminary injunction application as "Ps.Br."

allegation that a violation of the Twelfth Amendment would infringe their constitutional rights does not of itself establish an injury in fact to them personally. A general interest in seeing that the government abides by the Constitution is not sufficiently individuated or palpable to constitute such an injury. *Cf. Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

■ Plaintiffs' assertion that a violation of the Twelfth Amendment will harm them by infringing their right to cast a meaningful vote also fails to satisfy the Article III requirement of a "distinct and palpable injury." *Warth,* 422 U.S. at 501, 95 S.Ct. 2197. This type of injury is necessarily abstract, and plaintiffs conspicuously fail to demonstrate how they, as opposed to the general voting population, will feel its effects. *See Froelich v. Federal Election Comm'n,* 855 F.Supp. 868, 870 (E.D.Va. 1994) (holding that plaintiffs who alleged that interstate campaign contributions deprived them of meaningful vote described injury that was too abstract and hypothetical to constitute injury in fact under Article III). Indeed, the undifferentiated and general nature of the claimed harm is illustrated by ¶ 58 of plaintiffs' amended complaint, in which they allege that if the Texas Electors are permitted to vote for Governor Bush and Secretary Cheney, "Plaintiff[s] *and all other American citizens* will suffer immediate and irreparable injury[.]" Ps.Am.Compl. ¶ 58 (emphasis added). Absent a stronger showing of a particularized, palpable injury, plaintiffs have fallen short in their attempt to establish standing to vindicate their own interests in this suit.

■ Separate from their own asserted interests, plaintiffs maintain that they "have standing to protect the interests of the non-defendant candidates for President and Vice President." Ps.Resp.Br. at

4. This statement appears to suggest that plaintiffs have third party standing to assert the interests of all non-defendant candidates for President and Vice President who appeared on the general election ballot in Texas. In support of this right, plaintiffs cite *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), and *Henderson v. Fort Worth Independent School District,* 526 F.2d 286 (5th Cir. 1976). None of these cases, however, establishes standing for voters to vindicate the interests of candidates for public office. Rather, the decisions recognize that voters may have an independent interest, albeit related to the candidate's interest, that may be harmed by the same action that adversely affects the candidate. For example, in *Anderson* the Court recognized that restrictions that prevented a candidate from obtaining ballot access injured voters by burdening their right to express a political preference for that candidate. *See Anderson,* 460 U.S. at 786–87, 103 S.Ct. 1564. The interest of the voters in *Anderson,* therefore, was sufficiently distinct from the interest of the candidate so that the voters were not simply suing to uphold the candidate's rights. Like *Anderson, Bullock* and *Henderson* both involved voter challenges to ballot access restrictions. *See Bullock,* 405 U.S. at 134, 92 S.Ct. 849 (considering constitutionality of Texas law requiring filing fee to have name placed on ballot); *Henderson,* 526 F.2d at 286 (addressing requirement that school board candidates be qualified voters to gain spot on ballot). In the present case, however, plaintiffs essentially assert a per se third party standing right to "protect the interests of the non-defendant candidates."

Because plaintiffs have failed to demonstrate a specific and individualized injury from the impending alleged violation of the Twelfth Amendment and are unable to show personal injury through harm done to non-defendant candidates, the court

holds that they do not have standing under Article III to bring this suit. The court grants defendants' motions to dismiss and dismisses this action without prejudice [7] by judgment filed today.

## III

Although the court is dismissing this case for lack of standing, it will address the merits of plaintiffs' application for a preliminary injunction. The Texas Electors are by law scheduled to vote on December 18, 2000. Entering a ruling on the preliminary injunction application will assist the parties in obtaining full appellate review in the short period that remains before the Electoral College votes.

### A

■ To obtain a preliminary injunction, plaintiffs must establish (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiffs outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F.Supp. 1349, 1353 (N.D.Tex.) (Fitzwater, J.) (citing *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)), *aff'd*, 948 F.2d 1286 (5th Cir.1991) (per curiam) (table).[8] Plaintiffs must satisfy all four requirements. *Plains Cotton Coop. Ass'n v. Goodpasture Computer*

*Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987); *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.1985). A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985)); *see Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985) (stating that movant must "clearly carr[y] the burden of persuasion."). The decision to grant a preliminary injunction "is to be treated as the exception rather than the rule." *Mississippi Power*, 760 F.2d at 621.

### B

The court holds that plaintiffs have failed to show a substantial likelihood that they will prevail on the merits.[9]

#### 1

The touchstone for determining the meaning of the term "inhabitant" in the Twelfth Amendment is the intent of the Framers. *See Lake County v. Rollins*, 130 U.S. 662, 670, 9 S.Ct. 651, 32 L.Ed. 1060 (1889). Although the Twelfth Amendment was not ratified until 1804, the constitutional requirement that the President and Vice President be "inhabitants" of different states is found in the Constitution as originally adopted and ratified at the creation of the Republic. Article II, § 1, cl. 3

---

7. *See, e.g., Daggett v. Commission on Governmental Ethics and Election Practices*, 205 F.3d 445, 472 (1st Cir.2000) (holding that dismissal for lack of standing is without prejudice).

8. The Fifth Circuit has applied the four-part *Canal Authority* test in election suits in which plaintiffs sought preliminary injunctions. *See Chisom v. Roemer*, 853 F.2d 1186, 1188–89 (5th Cir.1988) (citing *Canal Authority* and vacating preliminary injunction based on plaintiffs' failure to establish that public interest required that election be enjoined); *Libertarian Party of Tex. v. Fainter*, 741 F.2d 728, 729

(5th Cir.1984) (per curiam) (adopting *Canal Authority* test to decide whether political party had shown right to injunction in case challenging requirements that party must meet to have names of candidates printed on general election ballot). Plaintiffs, *see* Ps.Br. at 1–2, and defendants, *see* Ds. (Bush and Cheney) Br. at 3–4, recognize the applicability of this four-part formulation to the present case.

9. The court assumes *arguendo* that plaintiffs have met the three remaining requirements for obtaining a preliminary injunction.

provided, in relevant part, that "[t]he Electors shall ... vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves." U.S. Const. art. II, § 1, cl. 3, *amended in relevant part by* U.S. Const. amend. XII. The court determines the Framers' intent from the unambiguous language of the Twelfth Amendment. *Lake County*, 130 U.S. at 670, 9 S.Ct. 651.

> The object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and, when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.

*Id.* The Supreme Court "has constantly reiterated that the language of the Constitution where clear and unambiguous must be given its plain evident meaning." *Solorio v. United States*, 483 U.S. 435, 454 n. 3, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) (quoting *Reid v. Covert*, 354 U.S. 1, 8, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion)). *Id.* It is the role of this court to interpret the Constitution, not to add to it or subtract from it based on personal inclination.

The court's inquiry into the meaning of "inhabitant" is informed by definitions of the term contained in dictionaries in use at the time the Twelfth Amendment was adopted and ratified. *See United States v. Lopez*, 514 U.S. 549, 585–602, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (Thomas, J., concurring) (determining common meaning of term "commerce" at time of ratification based on definitions from contemporary dictionaries). In 1792 a law dictionary defined "inhabitants" of a town or parish as follows:

> with respect to the public assessments, and the like, are not only those who dwell in an house there, but also those who occupy lands within such town or parish, although they be dwelling elsewhere. But the word inhabitants doth not extend to lodgers, servants, or the like; but to householders only.

Richard Burn & John Burn, *Law Dictionary* (1792). Webster's dictionary, published in 1828, defined "inhabitant," in pertinent part, as a

> dweller, one who dwells or resides permanently in a place or who has a fixed residence, as distinguished from an occasional lodger or visitor. . . . One who has a legal settlement in a town, city or parish.

N. Webster, *American Dictionary of the English Language* (Facsimile Edition by Foundation for American Christian Education 5th ed. 1828, 1967, 1987) (not paginated), *quoted in* Charles Wood, *Losing Control of America's Future: The Census, Birthright Citizenship, and Illegal Aliens*, 22 Harv.J.L. & Pub. Pol'y 465, 478 (1999). These definitions closely parallel the modern concept of domicile, which "is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *see* Black's Law Dictionary 1310 (7th ed.1999) ("*domicile* usu[ally] requires bodily presence plus an intention to make the place one's home").[10]

█ The court therefore holds that a person is an "inhabitant" of a state, within the meaning of the Twelfth Amendment, if he (1) has a physical presence within that state and (2) intends that it be his place of habitation. The test for ascertaining inha-

---

**10.** Plaintiffs urge that "the best definition of 'inhabitant,' and the one most likely to correspond to the framers' intent, is to equate 'inhabitant' with 'domiciliary.'" Ps.Br. at 6. They appear to concur in the formulation that the court adopts. *See id.* at 6–7 (urging that change in domicile requires physical presence at new location and intention to remain there indefinitely or absence of intention to go elsewhere). Defendants suggest that the domiciliary standard is higher than the requirements for inhabitance, but maintain that Secretary Cheney's actions nevertheless satisfy this more rigorous standard. Ds.Br. at 14.

bitance is thus a dual inquiry concerning physical presence in fact and intent to remain in or to return to the state after an absence. *See State of Texas v. State of Florida,* 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939) (addressing analogous requirements of domicile); *Coury v. Prot,* 85 F.3d 244, 250 (5th Cir.1996) (holding that "change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely ... or, as some courts articulate it, the absence of any intention to go elsewhere.").

In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.

*Coury,* 85 F.3d at 251 (using factors to determine whether Texas citizen was domiciled in France).

2

■ The record shows[11] that Secretary Cheney has both a physical presence within the state of Wyoming and the intent that Wyoming be his place of habitation.[12]

It is undisputed that he was born, raised, educated, and married in Wyoming and represented the state as a Member of Congress for six terms. After additional public service, he eventually moved to Dallas, Texas to become the Chief Executive Officer of Halliburton Corporation ("Halliburton").

On or about July 21, 2000 Secretary Cheney declared his intent to return to his home state of Wyoming. Ps.App. 3. On or after that date, and before today, he traveled to Wyoming and registered to vote there, requested withdrawal of his Texas voter registration, voted in Wyoming in two elections, obtained a Wyoming driver's license (which, in turn, resulted in the voiding of his Texas license), and sold his Texas house. *Id.* at 4–5, 16; Ds.App. 2, 7 .[13] He advised the United States Secret Service that his primary residence is his home in Jackson Hole, Wyoming, and he retired from employment with Halliburton. Ps.App. 4. He also requested that the United States Postal Service rescind a prior order on file in Teton County, Wyoming to forward mail to Dallas, Texas. *Id.* at 8. One of his four vehicles is registered in the state of Wyoming and is physically located there. *Id.* at 5.

■ Moreover, the fact that, if elected Vice President, Secretary Cheney will reside in Washington, D.C. does not deprive him of status as an inhabitant of Wyoming. At the time the Constitution was adopted, the term "Inhabitant" was used not only in

11. Plaintiffs assert that Secretary Cheney "cannot meet his burden that he has changed his domicile to Wyoming." Ps.Br. at 7. They have misplaced the burden of proof. Plaintiffs seek a preliminary injunction. They therefore have the obligation to demonstrate a substantial likelihood of success on the merits of their inhabitance claim.

12. Although defendants contend that the operative date for determining inhabitance under the Twelfth Amendment is the day the Electoral College votes (in this case, December 18, 2000), the court need not decide this question because it holds that plaintiffs have failed to establish a substantial likelihood that

Secretary Cheney has been at some point since July 21, 2000, or will be on December 18, 2000, an inhabitant of Texas. *Cf.* Ps.Br. at 10 (arguing that "the date as of which inhabitancy must be established is probably immaterial under the facts of this case.").

13. The court overrules plaintiffs' December 1, 2000 objections to ¶ 2 of the declaration of Allie Beth Allman based on hearsay and the best evidence rule because neither has merit. Because the court has not relied on the declaration of William A. Kramer, the objections addressed to his declaration are denied as moot.

Article II, § 1, cl. 3 (and later in the Twelfth Amendment) to limit the persons for whom electors could vote for President and Vice President, but was also found in the Qualification Clauses. Article I, § 2, cl. 2 and Article I, § 3, cl. 3 provide, respectively, that a member of the House of Representatives and of the Senate shall be an "Inhabitant" of the State for which he is chosen. The Framers selected the term "Inhabitant" rather than "resident" because "Inhabitant" "would not exclude persons absent occasionally for a considerable time on public or private business." *Schaefer v. Townsend*, 215 F.3d 1031, 1036 n. 5 (9th Cir.), *petition for cert. filed*, 69 U.S.L.W. 3318 (U.S. Oct. 26, 2000) (No. 00–675). Because there is no indication in the text of the Constitution that the same term should be given different meanings in these provisos, this understanding of the definition of "inhabitant" applies equally to Article II, § 1, cl. 3 and to the Twelfth Amendment. Therefore, Secretary Cheney is not deprived of status as a Wyoming inhabitant simply because he intends, if elected, to be absent from the state for a considerable time on public business.

It is evident from the preliminary injunction record that Secretary Cheney intended by his conduct to comply with the Twelfth Amendment, not to debase it through legerdemain. Plaintiffs have thus failed to demonstrate a substantial likelihood of success on the merits of their claim that Secretary Cheney has been at some point since July 21, 2000, or will be on December 18, 2000, an inhabitant of the state of Texas.

\* \* \* \* \* \*

Defendants' motions to dismiss are granted and this case is dismissed without prejudice by judgment filed today. Plaintiffs' application for a preliminary injunction is denied.

**SO ORDERED.**