Tom DAXON, Petitioner,

v.

The STATE ELECTION BOARD of the State of Oklahoma, and Margaret Elaine Allman, Chairman, V. Burns Hargis, Vice-Chairman, and Lee Slater, Secretary, Respondents,

and

John M. Rogers, Intervenor.

No. 52580.

Supreme Court of Oklahoma.

Aug. 7, 1978.

N. Franklyn Casey, Kevin Coutant, Tulsa, for petitioner.

Larry Derryberry, Atty. Gen., R. Thomas Lay, Asst. Atty. Gen., Oklahoma City, for respondents.

Lewis B. Ambler, Bartlesville, for intervenor.

WILLIAMS, Justice:

Involved here is the question of whether we should reverse a finding and order of the State Election Board striking the name of petitioner Tom Daxon from the state ballot in the general election to be held on November 7, 1978, as the Republican party candidate (nominee) for the office of State

Auditor and Inspector. We determine we should assume original jurisdiction and reverse such finding and order and grant writ accordingly.

Mr. John M. Rogers, present occupant of the position of State Examiner and Inspector of Oklahoma, and a candidate for the Democratic party nomination for the new office of State Auditor and Inspector is contesting the candidacy of Mr. Tom Daxon as the Republican party candidate for the same position on the ground Mr. Daxon was not of the age and had not been a qualified elector for the length of time required of one to qualify for the position in question. The evidence shows that Mr. Daxon will on December 19, 1978, become thirty-one (31) years of age and have been a qualified elector for ten (10) years.

Section 1 of Article VI of our State Constitution as amended by vote of the people on July 22, 1975, and to become effective on January 8, 1979, created the position of State Auditor and Inspector in the Executive Department of our State government. In effect, the creation of that new position amounted to a consolidation of two former positions previously in existence pursuant to Constitution Article VI, § 1 prior to its amendment. Sections 3, 4, and 19 of such Article VI were amended at the same time and in the same manner as was Section 1, supra. Both Sections 3 and 19 contain eligibility requirements for holders of the office of State Auditor and Inspector. Section 19 states that the State Auditor and Inspector must have had at least three years' experience as an "expert accountant."

In addition to the requirement made by Section 19, supra, Section 3 of Article VI, speaking to the matter of the eligibility requirements for seven named offices in the Executive Department of our State government including those of the Governor, Lieutenant Governor, Attorney General, and State Auditor and Inspector among others, provides in pertinent part, "No person shall be eligible to the office of * * * State Auditor and Inspector * * * except a citizen of the United States of the age of not less than thirty-one (31) years and who

shall have been ten (10) years next preceding his or her election or appointment, a qualified elector of this state."

It is conceded that candidate Daxon is an "expert accountant" with "at least three years' experience."

In fact, there appears to be no question but that Mr. Daxon's filing for the position in question was regular in all aspects and it is not contended that he did not possess the qualifications to lawfully become State Auditor and Inspector if elected to the position except that respondents Board and members and Rogers contend and the Board and the members thereof have determined that candidate Daxon is not "eligible to the office of * * * State Auditor and Inspector" because he is not "of the age of not less than thirty-one (31) years" and that he "shall not have been ten (10) years next preceding his * * * election a qualified elector of this State."

Pursuant to that finding, the Board on July 18, 1978, sustained the petition of Mr. Rogers contesting the candidacy of Mr. Daxon, denied his application to be a candidate, ordered his name stricken from the ballot as the Republican party candidate (nominee) for the office in question, and assessed the costs of the proceeding against him. At a hearing on July 21, the Board permitted a lengthy representation of the parties' arguments but denied rehearing by a split vote on the theory that it had not erred in its original determination herein involved.

Mr. Daxon asserts here that with the passing of time he will have become qualified for the office he seeks prior to January 8, 1979, and in support of his claim cites the decision of *Gragg v. Dudley et al.,* 143 Okl. 281, 289 P. 254, 255 (1930). In that case a portion of this Court's syllabus reads as follows:

"Section 26 of article 5 of the Constitution of Oklahoma provides that, 'the members of the Legislature shall meet at the seat of government on the first Tuesday after the first Monday in January at twelve o'clock, noon, in the year next succeeding their election, or upon such other day as may be provided by law.'

And section 5 of article 6 of the Constitution of Oklahoma provides: 'The returns of every election for all elective state officers shall be sealed up and transmitted by the returning officers to the Secretary of State, directed to the Speaker of the House of Representatives, who shall, immediately after the organization of the House, and before proceeding to other business, open and publish the same in the presence of a majority of each branch of the Legislature, who shall for that purpose assemble in the hall of the House of Representatives. The persons respectively having the highest number of votes for either of the said offices shall be declared duly elected; but in case two or more shall have an equal and the highest number of votes for either of said offices, the Legislature shall, forthwith, by joint ballot, choose one of the said persons so having an equal and the highest number of votes for said office.' * * *."

In addition to the provisions of our Constitution referred to in the foregoing quotation, our Constitution Art. V, Sec. 23 in pertinent part provides as follows:

"No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any office or commission in the State, which shall have been created, or the emoluments of which shall have been increased, during his term of office, * * *."

Article V, Section 9 of the Constitution in 1930 was of provision that members of the Oklahoma State Senate should hold office for four years with those elected at Statehood to hold until the fifteenth day after the regular state election in 1908 as to half their number or 1910 as to the other half.

In the case of *Gragg v. Dudley, supra,* the contention was made in the trial court that the State Election Board and other defendants should be enjoined from permitting Mr. C. S. Storms of Waurika, then State Senator, to have his name appear on the statewide primary election ballot and again on the general election ballot in 1930 as a candidate for the office of Lieutenant Governor because he had voted for a salary raise for the office of Governor and if elect-ed Lieutenant Governor might become the Governor but for his alleged ineligibility.

In *Gragg v. Dudley, supra,* we said: "*Held,* that under section 26 of article 5, and section 5 of article 6, supra, of the Constitution, a candidate for Lieutenant Governor, voted on at the general election in November, 1930, would not be elected and his election would not be complete until the result was announced, as provided by this constitutional provision."

The Court in *Gragg v. Dudley, supra,* concluded that the election of a Lieutenant Governor would not have been completed until the members of the Legislature should have met on the first Tuesday after the first Monday in January, 1931 and declared "those receiving the highest number of votes elected." The Court said "defendant C. S. Storms would not be elected until the final result is declared by the Legislature."

In its order with which we here are concerned rejecting Mr. Daxon's proffered candidacy, the Board relied upon the case of *Findley v. State Election Board,* Okl., 325 P.2d 1037, 1038 (1958).

Insofar as the holding in *Findley, supra,* may be considered or inferred to have determined Mr. Findley had to have had the constitutional qualifications by the very date of the holding of and casting of ballots in the general election, it is surplusage, not germane to the question involved, obiter dictum and *in no wise controlling of our question presently here involved* and is distinguished.

The holding in *Gragg v. Dudley, supra,* that an election is complete when the Legislature first convenes and opens and publishes the returns is the law which determines this case. We here adhere to our ruling in that case. The results of the election of the first State Auditor and Inspector will not have been "opened and published" until done so before a majority of the members of both branches of the Legislature in the "hall of the House of Representatives" on Tuesday, January 2, 1979.

As above stated, Mr. Daxon, prior to that date and with the passing of time, on De-

cember 19, 1978, will have reached the age of 31 years and have been a qualified elector for at least 10 years.

In passing, we note that our petitioner, Mr. Daxon, argues an alternative proposition of effect that the constitutional requirement that he be a qualified elector for ten (10) years prior to his election is in violation of the First and Fourteenth Amendments to the Constitution of the United States. Having reached the result in this case presently contemplated, we need consider that argument no further.

We assume original jurisdiction and grant writ of mandamus for the Board to place the name of petitioner Daxon on the statewide general election ballot as the Republican party candidate (nominee) for the position of State Auditor and Inspector.

Writ granted.

HODGES, C. J., LAVENDER, V. C. J., DAVISON, BARNES, SIMMS and DOOLIN, JJ., and ROMANG, Special Justice, concur.

BERRY, J., certified his disqualification and the Honorable RICHARD E. ROMANG was appointed to serve in his stead.