Irven R. BOX, Plaintiff,

v.

STATE ELECTION BOARD OF OKLAHOMA, consisting of Edna Mae Phelps, Chairman, et al., Defendants,

Kenneth Nance, Intervenor.

No. 47677.

Supreme Court of Oklahoma.

Sept. 10, 1974.

Robert E. Walker, Oklahoma City, for plaintiff.

Larry Derryberry, Atty. Gen. of Oklahoma, Michael Cauthron, Asst. Atty. Gen., Oklahoma City, for defendants.

Robert H. Mitchell, Oklahoma City, for intervenor.

LAVENDER, Justice:

The plaintiff, Irven R. Box, on July 24, 1974, filed his application asking this court to assume original jurisdiction under a petition for writ of mandamus to issue against the State Election Board of Oklahoma, as defendant, requiring that board to place plaintiff's name on the ballot as a candidate for the Democratic nomination as State Representative in District 91.

This court heard the application July 26, 1974. Kenneth Nance, a candidate for the same office and protestant to the filing of the Box candidacy before the State Election Board, was allowed to intervene in this proceeding. The transcript of evidence (as supplemented), adducted before the election board was agreed by the parties to be the evidence before this court.

Under date of July 26, 1974, this court issued its order requiring the defendant, State Election Board of Oklahoma, to rescind its previous order in its Cause No. 7-74 striking the name of Irven R. Box and requiring that board to cause plaintiff's name to be printed on the ballot as a candidate of the Democratic nomination for the office of State Representative in District 91.

On July 10, 1974 Box filed his notification and declaration of candidacy for the Democratic nomination to the House of Representatives, District No. 91. Shortly thereafter Kenneth Nance, who also had filed for that office and is now an intervenor in this action, filed a protest to Box's candidacy upon the basis that Box did not qualify according to 14 O.S.1971 § 108 in that he was not, for the six month period immediately preceding the filing period (July 8, 9, and 10, 1974—26 O.S.1971 § 163), a qualified registered elector in such district.

A hearing was held on the protest by the State Election Board on the 18th day of July, 1974. At that hearing, evidence was adduced. At the conclusion of the hearing, the Board decided in favor of the protest and ordered Box's name stricken as a candidate for the House seat.

Box testified that although he had lived for more than twenty-five years in District 91 that in 1971 he moved his family consisting· of his wife and two school age boys to a small acreage in Canadian County, Oklahoma. He had purchased the acreage and it was then his intention to build a home on it. At that time, he changed his registration from Oklahoma County, House District 91, to Canadian County, House District 98. In 1972 he was a candidate for the Democratic nomination for the House of Representatives from House District 98.

He and his wife secured a blueprint of a home which they then desired to build on their acreage, but upon further study of the matter concluded that it would not be economically .feasible for them to do so.

In October 1973, Box entered into a contract described by him as a "lease-purchase" agreement by which he agreed to lease a single family residential dwelling at 1528 S.W. 44th Street, Oklahoma City, with an option exercisable by him at any time before May 1, 1974, to purchase the property. The house is located within the confines of House District 91, Oklahoma County. He testified that when he signed the agreement it was his intention to thereby change his residence to the S.W. 44th Street house. In that same month he changed his registration for voting purposes to the "place of my residence, 1528 S.W. 44th Street." Thereafter he began a course of fixing and repairing the premises to make it more liveable for himself and his family. In doing so, he borrowed as much as he could at a bank—$5,000.00. He stated he commenced that very afternoon, in October 1973, to repair the property. Before May 1, 1974, he exercised his option to purchase the property and obtained a deed to it which, about that time, was filed of record. Box testified further he moved a quantity of his own clothing into the 44th Street property. He also moved some furniture into it, and he spent approximately sixty per cent of his time there. He worked at his law practice during the day and worked in the evenings on the reconstruction and repair of the house.

Another witness testified on Box's behalf that he had visited Box and his wife in the 44th Street property approximately ten times in the period from October 1973, to the date of the hearing in July 1974, and as far as the witness was aware that was where the Boxes resided. He observed in the interior of the house the usual assortment of furnishings contained in residences. He saw Box's clothing there and had dinner there with the Boxes one evening.

It was shown the house was also used by Box as his law office; that he had a desk near the front door and a small reception area there for his clients, but the rest of the dwelling was used for living quarters.

The testimony in opposition to the above consisted of that elicited from Box himself to the effect that during that period (October 1973 to the filing period provided by law, July 8, 9, and 10, 1974) the wife and children spent more than 50% of their time out on the acreage living in the small mobile home; the two Box boys finished the school year at the Mustang school; Mrs. Box did not change her voter registration back in October 1973, but only fairly recently; and the telephone numbers listed in the telephone directory showed the Canadian County property as "residence" and the 44th street property as "business" phones. The witness from the telephone company testified, however, that if one had his office in his home his phone would be listed as a "business" phone.

There was also testimony that near the end of the 1973–74 school year the school officials at Mustang sent home with each of the small Box boys a form to be filled out and returned indicating whether they would be attending school in Mustang during the 1974–75 school year. Copies of the forms were introduced which had apparently been completed by Mrs. Box and which indicated an intention to attend the Mustang school next year. The witness from the school, however, testified the

school patrons were asked to fill out the cards even if they intended to change their residence and would not actually be attending the Mustang school next year.

There was testimony Mr. Box did not apply to have the electricity turned on at the 44th street property until May 30, 1974, although, according to Box, the electricity was on at the property all of the time from October 1973, on and was used by him. The gas was turned on in late December 1973, and the water service apparently continued at the property all during the time.

There was also evidence Mr. and Mrs. Box did not want to continue living in the trailer. They were afraid for the safety of the family during wind storms. When they were unable to commence the construction of a home in the country, they decided to buy a house in District 91.

■ The State Election Board was carrying out its statutory duty in hearing the challenge to the Box candidacy pursuant to 26 O.S.1971, § 165a. That proceeding does not provide for a review by appeal. The election board heard the evidence and made an arbitrary ruling. Does this court have the power to issue a writ of mandamus which has the effect of reversing an arbitrary decision in the case at bar? We believe it does.

The Oklahoma constitution vests in this court original jurisdiction with the power to issue, hear and determine writs of mandamus. Const. Art. 7, § 4. The legislature by statute has also given to this court the power to issue writs of mandamus to various entities including boards. This court has applied that power to acts of boards and officials of government, including tribunals and courts.

Syllabus 4 by this court in Green-Boots Const. Co. v. State Highway Commission, 165 Okl. 288, 25 P.2d 783 (1933) said:

"Although ordinarily mandamus will not lie to compel the performance of the duty of an officer when such discharge of the duty requires an exercise of official judgment and discretion, and the particular duty is not a purely ministerial duty; yet the writ may be issued to correct an abuse of discretion or to compel action, where the action taken or the refusal to act is arbitrary, even though the officer is vested with judgment and discretion in the performance of the specific duty."

This highway commission case, supra, was cited along with other Oklahoma authority in Board of Com'rs of Carter County v. Dorough, 177 Okl. 346, 59 P.2d 273 (1936) with that rule of law again announced in a syllabus by the court in exactly the same language as quoted above.

Upon the finding of (a) abuse of discretion or (b) an arbitrary act, this court has also granted a writ of mandamus as to discretionary acts of a city clerk, an attorney general, and the board of equalization.[1]

■ The candidacy here involved is for the House of Representatives. Members of the House of Representatives shall be qualified electors in their respective counties or districts. Const. Art. 5, § 17.

"In order to file as a candidate for the House of Representatives in any of the representative districts, the candidate must have been a qualified registered elector in such district for at least six (6) months immediately preceding the filing period prescribed by law. * * *." 14 O.S.1971, § 108.

Did Box meet this qualification? The issue is whether he had been a qualified registered elector in District 91 for at least six months immediately preceding the filing period commencing July 8, 1974.

For a person to be entitled to register as an elector of the precinct in which he is entitled to vote he must possess all the qualifications of an elector as defined in Section 1, Article III of the State Consti-

---

1. Dunham v. Ardery, 43 Okl. 619, 143 P. 331 (1914); Board of Education v. Short, 89 Okl. 2, 213 P. 857 (1923); Marland v. Hoffman, 184 Okl. 591, 89 P.2d 287 (1939).

tution. 26 O.S.1971, § 93.1. A qualified elector is defined by the constitution as:

"* * * citizens * * * who have resided * * * in the county six months, * * *."

Although now repealed, this court has said the work "reside" as used in specifying the qualifications of an elector in 26 O.S.1961, § 61 meant "to be in residence, one's place of abode, as distinguished from a place where one is employed or an office or place devoted strictly to commercial enterprise." Johnson v. State Election Board, Okl., 370 P.2d 551 (1962).

Stevens v. Union Graded School Dist. No. 2, 136 Okl. 10, 275 P. 1056 was concerned with the meaning of "residents" under a special statute in a school election. That opinion quotes from Ruling Case Law the following, in part:

"The meaning of the term 'residence' for voting purposes as used in a state Constitution cannot be made a matter of legislative construction, it is purely a judicial question, * * * there can be no absolute criterion by which to determine where a person actually resides. Each case must depend on its particular fact or circumstances. * * * While bodily presence ordinarily is essential in effecting a domicil in the first instance, * * * the *most important factor* being *the intent* to establish a new domicil, *coupled with acts evincing such intent.*" (Emphasis added).

The Stevens case, supra, is in harmony with other cases defining "residence" as found in statutes other than election statutes.

Pope v. Pope, 116 Okl. 188, 243 P. 962 (1926) involving the question of domicile in a divorce suit. One of the syllabus by the court said:

"The controlling fact to be considered is the fact of intent and to determine this fact * * * may take into consideration all the movements, transactions, and attending circumstances of the party or parties involved in the question."

That case also held the domicile of a married woman, while she lives with her husband is the domicile of her husband; that is, her residence is merged into his.

Jacobson v. Kill, 94 Okl. 146, 221 P. 21 (1923) was an attachment case where residence was considered. It quotes 34 Cyc. p. 1647:

"* * * But residence is acquired by actual presence in the state, *coupled with the intention* to remain there permanently or for an indefinite period." (Emphasis added).

█ In another attachment case, Cornelison v. Blackwelder, 38 Okl. 1, 131 P. 701 (1913), this court said the intention of a person as to the place of his residence is a question of fact.

The evidence in the case at bar heretofore detailed in this opinion shows beyond any doubt the intent of Box to re-establish his residence in District 91 in October, 1973. That intent was coupled with facts evidencing that intent beginning then and continuing to the filing period. His residence was changed from Canadian County to Oklahoma County at that time. No other conclusion can be reached.

We believe the State Election Board failed to follow the evidence before it. By so doing, it denied the plaintiff Box the clear legal right to stand for election to the House of Representatives in District 91. The action striking his name from the ballot for that office was an abuse of discretion and an arbitrary act which requires this court to issue a writ of mandamus to the election board as prayed for.

Writ granted.

DAVISON, C. J., WILLIAMS, V. C. J., and BARNES, SIMMS and DOOLIN, JJ., concur.

BERRY and HODGES, JJ., dissent.