BIll HENDRIX and Bill Nigh, Petitioners,

v.

STATE of Oklahoma ex rel. OKLAHOMA
STATE ELECTION BOARD,
Respondents,

James L. Barker and George Camp,
Intervenors.

Mike SENEY, Petitioner,

v.

The STATE ELECTION BOARD OF
OKLAHOMA, Respondent,

Ernest Isch, Intervenor.

Nos. 49968, 49971.

Supreme Court of Oklahoma.

Aug. 19, 1976.

Rehearing Denied Sept. 21, 1976.

Bill Hendrix, Oklahoma City, Bonds, Matthews & Bonds, A. Camp Bonds, Jr., Muskogee, for Bill Hendrix and Bill Nigh.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for respondents.

Mike Norman, Muskogee, Kent F. Frates, Oklahoma City, for James L. Barker and George Camp.

James E. Poe, Tulsa, for Mike Seney.

Ernest Isch, pro se, and Daniel D. Draper, Jr., Stillwater, for Ernest Isch.

WILLIAMS, Chief Justice:

In each of these cases, which were combined for decision because they present the same questions, this Court on July

30, 1976, after full hearing and upon careful consideration, issued its order assuming original jurisdiction and denying the requested writs of mandamus, with an announcement that a formal opinion would follow.

Petitioners Hendrix, Nigh and Seney each filed a declaration of candidacy for the office of State Representative for the district in which he was living. In each case, another candidate for the same office filed a protest to the declaration upon the ground that the declarant was not qualified to ·be a candidate. In each case, the State Election Board, respondent herein, determined after hearing that the petitioners had not met the requirements of 14 O.S.1971, § 108, as amended in 1973, and ordered the declaration of candidacy stricken. Sec. 108, provides in pertinent part as follows:

"To file as a candidate for the House of Representatives in any representative district, one must have been a qualified registered elector in such district for at least six (6) months immediately preceding the filing period prescribed by law. * * *."

Petitioners then filed these applications for this Court to assume original jurisdiction and issue writ of mandamus requiring the State Election Board to accept the declarations of candidacy and place the names of petitioners upon the ballots as candidates for nomination to the office of State Representative in their respective districts.

The pertinent facts are not in dispute and only questions of law are presented. The filing period for the 1976 primary elections opened on July 5, 1976. Although he was a ·resident of his district (No. 85) for more than a year before the filing period opened, petitioner Hendrix was not a "qualified registered elector" therein until February 6, 1976, when he transferred his registration from a precinct outside the district. Substantially the same situation existed with regard to petitioner Nigh, except that his registration was transferred to a precinct in his district (No. 13) on February 2, 1976. As to petitioner Seney, the transfer of his registration into his district (No. 84) was not made until June 28, 1976. Thus, the question in all cases is registration and not merely residence.

■ Petitioners argue that § 108 violates the equal protection clause of the United States Constitution, and that it violates the Oklahoma Constitution. They also take the position that the State Election Board misconstrued the first sentence of § 108, quoted above, and argue that it constitutes "only a six-month durational residency requirement", citing *Box v. State Election Board*, Okl., 526 P.2d 936 (1974), and *Draper v. Phelps*, D.C., 351 F.Supp. 677 (1972).

We are unable to agree. It is true that in both cases the residency requirement was the principal issue, and that in *Draper*, the court used the phrase "durational residency requirement" in the opinion. However, in neither case did the court say that § 108 is *only* a six months durational residency requirement. In *Box*, the principal issue was one of fact—whether Box had been a resident for six months before the beginning of the filing period—and this Court decided that question in his favor. In *Draper*, the facts were stipulated and the question presented was whether the requirements of the first sentence of § 108 amounted to a denial of equal protection of the laws. After quoting the first sentence of the section, the three-judge federal district court specifically noted, at page 679, that "Each Plaintiff herein had not been 'a qualified registered elector' in the representative district for which he filed his notification and declaration of candidacy for the office of state representative for a period of 'at least six (6) months preceding the filing period.'" The court then gave detailed and scholarly consideration to the constitutional question and held, at page 686, that § 108 is "a valid statutory enactment of the Legislature of Oklahoma and complies fully with the Equal Protection of the Law clause of

the Fourteenth Amendment of the Constitution of the United States."

Petitioners also argue that our legislature was without authority, under the Oklahoma Constitution, to enact § 108, citing *Cornell v. McAllister*, 121 Okl. 285, 249 P. 959 (1926). That case concerned the qualifications of a candidate for the office of State Examiner and Inspector, and not the office of State Representative. This Court held that certain statutory provisions did not have the effect of enlarging the qualifications set out in the Oklahoma Constitution. It is suggested that the same situation exists here, and that § 108 has the effect of enlarging upon the qualifications for candidates for the office of State Representative set out in Article 5, § 17, Oklahoma Constitution.

Again, we are unable to agree. The cited section of our Constitution provides that *members* of the House of Representatives shall " * * * be qualified electors in their respective counties or districts and shall reside in their respective counties or districts during their term of office." The section plainly does not set out the qualifications of candidates for the office. In *Johnson v. State Election Board*, Okl., 370 P.2d 551 (1962) this Court said concerning the quoted language from that section: "The plain meaning of this language is that the requirements of this section have reference to the status of representatives at and after their election to office *and not prior to or during their candidacy for* such office." (emphasis supplied). Since the qualifications of candidates for State Representative are not set out in Article 5, § 17, it cannot be said that 14 O.S.1971, § 108, is contrary to that section.

An additional argument with respect to petitioner Nigh, who transferred his registration into his district on February 2, 1976, is that the Election Board was closed for registration purposes from January 9, 1976, to February 2, 1976, and that his transfer on February 2, 1976, should therefore be given effect as of January 10, 1976; that the proper time for the opening of the filing period in 1976 was the second Monday in July, which was July 11th, and that from January 10th to July 11th, is more than six months.

On the latter point, it may be noted that under 26 O.S.1974 Supp., § 5–110, the filing period begins on " * * * the first Monday after Independence Day * * *." In 1976, Independence Day fell on a Sunday, and the Attorney General, in an official opinion, held that the filing period would begin on the next day, Monday, July 5, 1976. This is in accordance with 25 O.S.1971, § 82.1, which designates the legal holiday for the observance of Independence Day as July 4th, and provides that " * * * Any act authorized * * * to be performed on a holiday as designated in this section may be performed on the next succeeding business day * * *." Since, even if petitioner Nigh's transfer were given effect as of January 10th, he still would not have been a "qualified registered elector" in his district for six months before the opening of the filing period on July 5th, it cannot be said that he fulfilled the registration requirements of § 108.

We therefore hold that petitioners herein were not entitled to writs of mandamus requiring the State Election Board to place their names on the ballots as candidates for the office of State Representative in their respective districts, and their petitions for such writs were properly denied on July 30, 1976.

DAVISON, IRWIN, BERRY, LAVENDER and SIMMS, JJ., concur.

HODGES, V. C. J., and DOOLIN, J., dissent.

DOOLIN, Justice (dissenting):

The issue of the validity of residency requirements for public office is not before this court. We heartily agree with the reasoning in *Draper v. Phelps* supra, and *Box v. State Election Board* supra,

cited by the majority. Obviously if a candidate has not been a resident in a district for six months preceding his filing, he could not have been registered there for six months. However, these cases do not address the registration requirement itself. The issue presented in *Draper* was more specific than the majority would lead us to believe. The precise question discussed was not whether the entire § 108 was a denial of equal protection but rather whether creating the durational *residency* requirements was constitutional as a valid state interest. Whether the Legislature may enlarge the constitutional qualifications as to length of time a representative must be registered in the district where he intends to file has not been answered by this court or by any decision cited by the majority.

To argue as does the majority that if the Legislature may make reasonable durational *residency* requirements it may make additional durational *registrational* requirements is manufacturing a premise based on neither constitutional regulatory power nor precedent.

The above distinction should be recognized by this state.[1] In *Henderson v. Fort Worth Independent School District*, 526 F.2d 286 (5th Cir. 1976) we find a situation similar to the present case. The Texas Legislature enacted a statute which had the effect of requiring a candidate for a district school board to have been a *registered voter* in that district for three years. The Fifth Circuit specifically distinguished this requirement from that of residency. As an example a potential candidate could have been a resident of a school district all his life and still not be eligible to become a candidate for the school board under the Texas statute. The court held the right to be a candidate for public office is a fundamental right, consequently the provision seeking to limit this right must be subjected to strict scrutiny to ascertain whether such limitation promotes a compelling state interest.

"However, voter registration for a period of three years is, at best, a crude index of the capabilities of a potential candidate. The background, experience, and political views of the potential candidate are, among others, the indicia of merit and capability. No one contends, or could, that the state is empowered to impose qualifications or requirements in these areas. On the contrary, the power to make necessary subjective discriminations on the basis of background, experience, or political philosophy rests with the voters of the Fort Worth School District. It can be assumed that opposing candidates will bring deficiencies in any of these areas to the attention of the voters." *Henderson v. Fort Worth Independent School District* supra, at p. 292. The court held the provision requiring three years registration denied rights secured by the equal protection clause of the 14th amendment. Nowhere did the court state that its decision would have been any different if the required pre-candidacy registration was for a shorter length of time. If the residency requirements are met, the state can have no compelling state interest in durational registration in the district, whether it be three years or six months.

In *Cornell v. McAllister* supra, a legislative provision requiring a Certified Public Accountant certificate as a qualification for office of state examiner and inspector was held ineffective because the Oklahoma Constitution required only that he have three years experience as an expert accountant to qualify for the office. This court stated that the additional condition was tantamount to enlarging constitutional requirements for holding the office and thus invalid.

The majority's argument that Article 5 § 17 of the Oklahoma Constitution may be enlarged upon by the Legislature in contravention of *Cornell* because it applies to representatives upon their election to office and not to their qualifications for candidacy is an unsuccessful attempt

1. See *Lawrence v. City of Issaquah*, 84 Wash.2d 146, 524 P.2d 1347 (1974).

to dichotomize. A qualification for candidacy is a qualification for office.

The majority submits the Legislature, under *Johnson v. State Election Board* supra, has the right to prescribe qualifications for *candidates* for public office. This syllabus in *Johnson* was based on dicta in *Stafford v. State Election Board*, 203 Okl. 132, 218 P.2d 617 (1950) which was a case turning on the narrow point of Stafford's age. Neither *Stafford* nor *Johnson* attempts to change the law under *Cornell* that if these qualifications enlarge upon constitutional prerequisites for holding the office they are ineffective. The challenged statute in *Johnson* was held not to enlarge upon the constitutional requirements, and thus was a valid exercise of legislative authority.

Because the residency requirement of § 108 has been held valid does not mandate that its registration requirement is also valid. The requisite six months registration in the district does not satisfy any compelling state interest and amounts to a prohibited enlargement of constitutional requirements for holding the office of state representative. I therefore dissent.