Eugene MATHEWS, an Individual,
Petitioner,

v.

STATE ELECTION BOARD OF OKLAHOMA, consisting of Elaine Allman, Chairman, V. Burns Hargis, Vice-Chairman, and Lee Slater, Secretary, in their official capacities only, Respondents,

Joe Cannon, Intervenor.

No. 52590.

Supreme Court of Oklahoma.

Aug. 11, 1978.

Clifford Jones, Ronald E. Stakem, Joel Carson, Oklahoma City, for petitioner.

Larry Derryberry, Atty. Gen., R. Thomas Lay, Asst. Atty. Gen., Oklahoma City, for respondents.

D. C. Thomas, Don Hamilton, Jack P. Fite, Jim Patterson, Oklahoma City, for intervenor.

SIMMS, Justice.

Petitioner, a declared candidate for District Judge, Seventh Judicial District, Oklahoma County, ·Office No. 14, seeks mandamus to require the State Election Board to strike the name of Intervenor, Joe Cannon, who filed his declaration for the same office, from the November, 1978, general election non-partisan judicial ballot; or in the alternative, command the Board to conduct an evidentiary hearing to determine if intervenor will have been a bona fide resident of Oklahoma for a period of six months next preceding the November 1978 general election.

Timely contest to intervenor's candidacy was filed with Respondent Board, alleging in essence that Cannon had not been a resident of the State of Oklahoma long enough so that he will have been a resident of the State of Oklahoma at least six months next preceding November 7, 1978, the date of the general election for the office of District Judge, and therefore, Cannon is not a qualified elector within the meaning of Art. VII, Sec. 8, and Art. III, Sec. 1, of the Oklahoma Constitution. The Board dismissed petitioner's contest without hearing evidence.

Verified pleadings on file in this Court allege that Intervenor Cannon was formerly a resident of Oklahoma and held the office of District Judge in Oklahoma City until February 13, 1978, the date his resignation for that office became effective. That after the effective date of the resignation, Cannon departed this State with the intention of making the State of Florida his permanent residence after accepting a position as a Federal Administrative Law Judge in Tampa, Florida. The petition for mandamus further alleges that Intervenor, sometime in the month of June, 1978, returned to Oklahoma, but that he will not have resided in this state for the allegedly required six months before election. Petitioner concludes that Cannon is therefor not a "qualified elector" and is ineligible for election as District Judge.

The pivotal issue is whether there exists in Oklahoma a legally valid durational residency requirement of at least six months as one of the qualifications to become a candidate for District Judge.

Title 20, O.S.1971, § 92a, enacted first in 1941, provides in part: " * * * and they [District Judges] shall possess the qualifications prescribed by Section 9, Article 7, of

the Constitution of the State of Oklahoma." The 1941 qualification by statutory reference to the Constitution has neither been expressly repealed nor amended by the Legislature. Article VII, Sec. 9, of the Constitution, which was in effect at the time § 92a was enacted in 1941, provided, inter alia, a District Judge "shall have been a resident of the territory embraced within the State for two years, *and of the territory composing his district at least one year, prior to his election.*" (Emphasis Added) Article VII, as ratified in 1907 and in effect in 1941, was repealed and a new Article VII adopted in 1967 by vote of the people. The 1967 adoption of a new Article VII totally negates the § 92a reference to old Article VII, Sec. 9, because of the 1967 repeal, and Oklahoma no longer has a two-year or one-year durational residency requirement to be qualified as a district judge.

The present Art. VII, Sec. 8(g) provides that a candidate for District Judge "shall have had prior to election or appointment * * *; shall be a qualified elector of the respective district * * *." No specific durational residency requirements are contained in the new Art. VII for District Judge candidates.

"Qualified elector" is defined in Art. III, Sec. 1, Okl. Const., as a citizen of the United States and the State "who has resided in the state at least six months, in the county two months, etc."

Petitioner's legal argument is that Intervenor Cannon is not a qualified elector within the provisions of Art. VII, because Cannon has not been a resident of Oklahoma six months prior to election. Mathews concludes that if Cannon is not a "qualified elector" under Art. III, he isn't qualified to be a District Judge under the provisions of Art. VII.

Aside from 20 O.S.1971, § 92a, supra, which no longer controls, the statutes are void of any specified durational residency requirement for a candidate for district judge. Therefore, we are called upon to consider the constitutionality of the six months durational residency requirement found in Art. III, of Oklahoma's Constitution.

The United States Supreme Court, in *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), struck down Tennessee's one year durational residency requirement for voters as violative of the Equal Protection Clause of the 14th Amendment to the United States Constitution. *Dunn, supra,* held:

"Durational residence laws penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period. Such laws divide residents into two classes, old residents and new residents, and discriminate against the latter to the extent of totally denying them the opportunity to vote. The constitutional question presented is whether the Equal Protection Clause of the Fourteenth Amendment permits a State to discriminate in this way among its citizens. . . . .

\* \* \* \* \* \*

"Obviously, durational residence laws single out the class of bona fide state and county residents who have recently exercised this constitutionally protected right, [the freedom to travel throughout the United States], and penalize such travelers directly."

A Three-Judge District Court, Godbold, Circuit Judge, in *Hadnott v. Amos,* 320 F.Supp. 107 (1970), held, in part, that an Alabama constitutional amendment and statute requiring that a voter reside within the county for six months and in the precinct for three months immediately preceding election were violative of equal protection clause of the Fourteenth Amendment.

Petitioner attempts to distinguish *Dunn, supra* ; and *Hadnott, supra,* from the case at bar because both dealt with durational residency requirements of *voters,* not candidates.

To support his contention that durational residency requirements for candidates are constitutionally permissible, petitioner cites *Draper v. Phelps,* 351 F.Supp. 677 (1972). *Draper* upheld the validity of durational residency requirements of a candidate in

Oklahoma for the House of Representatives, as provided in 14 O.S.1971, § 108, which reads:

"In order to file as a candidate for the House of Representatives in any of the representative districts, the candidate must have been a *qualified registered elector* in such district for *at least six (6) months* immediately preceding the filing period prescribed by law . . ." (Emphasis Added)

Petitioner also places reliance upon *Fleak v. Allman,* 420 F.Supp. 822 (1976) which also addressed the issue of the constitutionality of 14 O.S.1971, § 108. The *Fleak* court followed the rationale of the *Draper* opinion and held that the "State does have a compelling interest 'in preventing frivolous and fraudulent candidacy' " by disqualifying the "carpet bagger", thus upholding the durational residency requirement for candidacy to the House of Representatives.

*Hadnott v. Amos, supra,* in addition to striking down the durational residency requirements of voters, held that the State of Alabama did have a compelling state interest justifying imposition of substantial (one-year) pre-election residence requirement for circuit judges.

■ *Hendrix v. State, ex rel., Oklahoma State Election Board,* Okl., 554 P.2d 770 (1976), cited by petitioner, also involved 14 O.S.1971, § 108, *supra,* pertaining to the qualification of a candidate for the Oklahoma House of Representatives. In *Hendrix,* we upheld the requirement of *registration* within the six months period as distinguished from a durational residency requirement. See also, *Box v. State Election Board,* Okl., 526 P.2d 936. Petitioner does not attack the lack of registration of Intervenor. Exhibits before the Election Board indicate that Intervenor has been continuously registered to vote in Oklahoma County at least since 1976 when he voted in a general election. Exhibits also show that Intervenor voted in a special bond election in the City of Edmond, Oklahoma County, on June 27, 1978, and that he transferred his registration from one Oklahoma County precinct to another Oklahoma County precinct on July 3, 1978. Absent any evidence to the contrary, we are bound to conclude that Intervenor was a registered voter in Oklahoma County for a period long in excess of six months prior to election.

Petitioner also relies on *County Election Board of Coal County v. Robison,* Okl., 352 P.2d 920, where this Court held that Everett Robison could not appear on a primary election ballot for the office of County Attorney of Coal County because he could not meet the six months residency requirements of an elector as set forth in Art. III, Sec. 1. *Robison* pre-dates *Dunn v. Blumstein,* and is no longer a correct statement of law insofar as the six months residency requirement is concerned.

We are in accord with the authorities presented by petitioner, but each of the cases is clearly distinguishable from the matter now before us. In all cases cited by petitioner which upheld durational residency requirements of candidates, there existed either a statute or constitutional provision setting forth specifically the length of residence required to become qualified to hold the office, or to become a candidate for the office. As above recited, no specified durational residency requirement to become a candidate for district judge or to qualify for that office can be presently found in our statutes or Constitution, save and except the Art. VII, Okl. Const. reference to "qualified elector", and the Art. III, Sec. 1, provision of six months residency requirement to become a "qualified elector."

■ Based upon *Dunn v. Blumstein, supra,* we conclude that the six months residency requirement in Art. III, Sec. 1, Okl. Const., violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Because the six months residency requirement to become a qualified elector is unconstitutional, it follows there is no existing and valid six months durational residency requirement as a qualification to become a candidate for district judge. We are not called upon to pass upon the constitutional validity of the remaining durational residency requirements set forth in Art. III, Sec. 1.

Attention is directed to that portion of Art. VII, Sec. 8(g) which reads: "Each District Judge shall have prior to election or appointment . . . . and shall have such additional qualifications as may be prescribed by statute." Nothing herein is to be construed as prohibiting the Oklahoma Legislature from imposing reasonable durational residency requirements upon candidates for district judge by statutory enactment. This opinion is expressly limited to the issue of durational residency requirements as a qualification for district judges, and is not intended to pass upon durational residency requirements contained in our constitution or statutes for any other elective or appointive public office.

In view of the above and foregoing, we find that Respondent Board did not act in an arbitrary, capricious, or unreasonable manner so as to warrant issuance of a Writ of Mandamus, and the request for same is Denied.

HODGES, C. J., WILLIAMS, BARNES and SIMMS, JJ., and BRETT, and REYNOLDS, Special Justices, concur.

BRIGHTMIRE and HERT, Special Justices, concur specially.

LAVENDER, V. C. J., and BERRY, IRWIN and DOOLIN, JJ., having certified their disqualification or otherwise not participating; the Honorable TOM BRETT, Honorable ROBERT L. HERT, Honorable PAUL W. BRIGHTMIRE, and Honorable LESTER REYNOLDS were duly appointed by the Chief Justice to sit in this cause.

BRIGHTMIRE, Special Justice (specially concurring):

In my opinion the term "qualified elector" was used in Art. VII, Sec. 8(g) as a means of incorporating by reference Art. III, Sec. 1 citizenship, age, and residency provisions as qualifying requirements for district judges. One of these residency prerequisites is that the candidate shall have resided in this state for "at least six months . . . next preceding the election . . . ."—a requirement which I think was not destroyed by *Dunn's*[1] conclusion that unreasonable durational residency requirements for voting privileges infringed upon a citizen's constitutional right to travel interstate. Thus, the problem, as I see it, is reduced to determining whether candidate Cannon has or will have resided in the State of Oklahoma for at least six months prior to the election.

In view of the definition given the term "election" by this Court recently in a matter involving a comparable provision—Art. 6, Sec. 3, Okl. Const., dealing with the qualifications of certain state executive officials—I am of the opinion, under the admitted facts here, that Intervenor Cannon will have satisfied the six months residency requirement by the time the election is constitutionally completed. *Daxon v. State Election Board*, Okl., 582 P.2d 1315 (1978). In *Daxon* the Court decided the constitutional requirement—that a candidate for State Auditor and Inspector must be not less than 31 years of age at the time of his election—meant that the office seeker must have reached his 31st birthday on or before the Speaker of the House of Representatives canvases the returns and publicly declares the winner, because until this final constitutional step[2] is taken the "election has not been completed" and no one has been "elected."

Petitioner concedes that judicial hopeful Cannon re-established his domicile in Oklahoma "sometime in the month of June 1978." Thus, unless he moves away in the meantime, Cannon will have resided in Oklahoma more than the prescribed six months by early January 1979 when the Oklahoma House of Representatives convenes and the Speaker determines who has the highest number of votes and publicly declares which aspirant has been elected district judge.

---

1. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

2. Art. 6, Sec. 5, Okl. Const.

I am authorized to state that Special Justice HERT concurs with the foregoing views.