1998 OK 86

**Jim ARTHUR, candidate for Payne County Commissioner, District 3, Petitioner,**

v.

**PAYNE COUNTY ELECTION BOARD, Jerry Rackley, Chairman, and Rex Holland, Vice–Chairman, Respondents.**

**No. 91638.**

Supreme Court of Oklahoma.

Aug. 4, 1998.

James V. Murray, Stillwater, for Petitioner.

Hal Wm. Ellis, Michael S. Morgan, Ellis & Morgan, Stillwater, for Real Party in Interest Carl Moreland.

Winfrey D. Houston, Houston & Osborn, Stillwater, for Real Party in Interest Tom Reyborn.

Charles S. Rogers, Assistant District Attorney, Stillwater, for Real Party in Interest Payne County Election Board.

WATT, Justice:

¶1 Petitioner, Jim Arthur, is a candidate for the office of Payne County Commissioner for District 3. Arthur has filed an original action asking this court to take original jurisdiction and issue "a writ of mandamus and prohibition" requiring to the Payne County Election Board to restore Arthur's name to the ballot as a Republican candidate. Arthur's two Democratic opponents, Tom Reyburn and Carl Moreland, filed identical protests to Arthur's candidacy. The sole ground stated in the protests was that Arthur was not "a qualified elector," contrary to the requirement of subsection D of 19 O.S.Supp. 1995 § 131.[1] Following a hearing on July 15, 1998, by a two-to-one vote, Respondent, the Payne County Election Board, removed Arthur's name from the ballot on the ground that Arthur was not "a qualified elector" as that term is used in § 131. The basis of the protests was that Arthur had been registered to vote for a number of years in District 1, rather than District 3, although the polling place at which he voted has, apparently, never changed. It is undisputed that Arthur has lived in the same house in District 3 for nearly thirty years, and voted at the same location until February 1998.

¶2 During the 1980s the boundary line between District 1 and District 3 was changed. The polling place where Arthur voted, which had been in District 3, was located in District 1 after the boundary was changed. Arthur's home, however, was unaffected by the change and remained in District 3. The Board continued to show Arthur's name on the precinct list at the polling place where he had always cast his ballots, however, and Arthur continued to vote there, although after the change in precinct boundaries Arthur's polling place was in District 1.

1. Title 19 O.S.Supp.1995 § 131 provides in material part:

   D. A county officer shall not, unless the county officer resigns from the office held by such officer, be eligible to become a candidate for another county office or state office. In order to file as a candidate for county commissioner in a county commissioner's district, the candidate must have been a qualified registered elector in that district for at least six (6) months immediately preceding the first day of the filing period prescribed by law.

We infer that the Board, despite the boundary change, erroneously believed that the precinct in which Arthur had always voted continued to be the appropriate place for Arthur to cast his ballots. No showing is made in the record that which precinct Arthur voted in was material for any purpose other than determining Arthur's qualification to run for County Commissioner. On February 19, 1998,after discovering that the Board had erroneously placed his name on the District 1voting rolls, Arthur requested that his name be placed on the District 3 rolls, and the Board did so.

¶ 3 At the conclusion of the July 15, 1998 hearing the Board concluded that Arthur had not been a qualified elector in District 3 for six months prior to his filing for office. The Board held that "the Petitioner had not voted from 1988 to 1996[,] thus his registration should be considered illegal and the contestee should be stricken as not being qualified." The Board based its conclusion on the fact that Arthur had not voted from 1988 until 1996. The record, however, shows without dispute that Arthur voted in 1996 and subsequent elections.

## ISSUE

¶ 4 When Arthur filed for the office of County Commissioner, District 3, had he "been a qualified elector in that district for at least six (6) months immediately preceding the first day of the filing period prescribed by law" as required by subsection D of 19 O.S.Supp.1995 § 131?

## DISCUSSION

¶ 5 We must resolve two sub-issues in determining whether Arthur had "been a qualified elector in District 3 for at least six (6) months immediately preceding the first day of the filing period prescribed by law" as required by subsection D of 19 O.S.Supp.1995 § 131, when he filed for office: (1) Did the change in Arthur's polling place from District 1 to District 3 less than six months before he filed for office deprive him of his status as "a

qualified elector for at least six (6) months" in District 3? (2) Did Arthur's failure to vote from 1988 until the 1996 elections disqualify him from seeking the District 3 Commissioner office? We answer "no" to both questions.

I. *The Change in Arthur's Registration from District 1 to District 3 Less Than Six Months Before He Filed for Office Did Not Disqualify Him from His Status as a Qualified Elector*

■ ¶ 6 Arthur's opponents, Moreland and Reyburn, based their contest of Arthur's candidacy on the ground that Arthur's having changed his registration from District 1 to District 3 less than six months before the election disqualified him under subsection D of 19 O.S.Supp.1995 § 131. At the hearing of the contest on July 15, 1998, the Board's counsel told the board that, in his opinion, Arthur could not be disqualified because the Board failed to correct its mistake by reassigning him to a precinct in District 3 to one in District less than six months before the filing period. The Board did not expressly address this issue in its order removing Arthur's name from the ballot. Based on the comments of the Board's counsel we infer that the Board intended to reject this contention of Arthur's opponents. If this was the Board's intention, we agree with it.

■ ¶ 7 The Board may order a candidate's name stricken from the ballot if it finds "that a contestee was not qualified to become a candidate for the office for which he filed." 26 O.S.1991 § 5–127.[2] If the record reflects that the board committed "an abuse of discretion and an arbitrary act" in striking a candidate's name from a ballot under § 5–127 we will assume original jurisdiction and issue a writ of mandamus. *Box v. State Election Board of Oklahoma,* 1974 OK 104 ¶ 26, 526 P.2d 936.

¶ 8 Arthur's registration in District 3 in February 1998 was made necessary only because of the Board's mistake in having erroneously assigned Arthur to District 1 after

---

2. Title 26 O.S.1991 § 5–127 provides:
   If the election board concludes that the contestee was not qualified to become a candidate for the office for which he filed a declaration of candidacy, it may order that his candidacy be stricken and that his name not be placed on the ballot.

redistricting in the 1980s. It was the Board's responsibility, not Arthur's, to assign Arthur to a precinct in District 3, where he has lived continuously for nearly thirty years. The Board's act in registering Arthur in District 3 in February 1998 was in the nature of an order *nunc pro tunc* to correct an administrative error. The Board is expressly authorized "to correct clerical or administrative errors." Title 26 O.S.1991 § 4–115.1 provides in material part that "The secretary of each county election board is authorized to correct clerical or administrative errors." Under the circumstances presented by this record, Arthur's qualification related back to his original registration in 1964. He had not moved, and continued to vote at the same location. Thus, the fact that the Board failed to catch and correct its mistake until less than six months before the filing period is not available to Arthur's opponents as a ground to disqualify Arthur under subsection D of 19 O.S.Supp.1995 § 131.

¶ 9 Arthur's opponents rely on *Hendrix v. State*, 1976 OK 111, 554 P.2d 770, in which we held that a candidate for the legislature was disqualified from seeking office because he failed to register in the legislative district in which he sought to run until less than six months before he filed. In *Hendrix*, the candidate moved into the district before the election but delayed registering to vote there until less that six months before the election. Here, in clear contrast to the facts in *Hendrix*, Arthur has not recently moved into the district, and was required to fill out a registration less than six months before he filed only because of the Election Board's own clerical error.

II. *Arthur's Failure to Vote from 1988 until 1996 Does Not Disqualify Him from Filing for Office*

¶ 10 At the hearing before the Board the Board's counsel claimed that Arthur's failure to vote from 1988 until 1996 disqualifies him from filing for office. The undisputed evidence shows that Arthur voted regularly from and after the 1996 presidential primary.

¶ 11 Our decision on this issue is governed by 26 O.S.Supp.1997 § 4–120.2.[3] Under § 4–120.2's terms no voter may be declared to be inactive unless (1) he is sent an "address confirmation mailing," and (2) fails to respond to that confirmation mailing, or whose mailing is returned as nonforwardable. Neither took place with respect to Arthur. The Board's counsel argues that the version of § 4–120.2 that was in effect from September 1 1994 until 1997 demonstrates that Arthur was not a qualified elector. We disagree.

¶ 12 The language relied on by the Board's counsel stated:

> After November 15 but no later than December 30, 1994, all registration information on inactive voters shall be removed from the central registry and the Oklahoma Election Management system and their registrations shall be canceled and the information destroyed.

26 O.S.Supp 1994 § 4–120.2. The Board claims that, it should have removed Arthur's record from the registry, and that despite its failure to do so, Arthur was disqualified as a voter from and after December 31, 1994.

¶ 13 The Board's argument fails for three reasons. First, the Board never classified Arthur's registration information as that of an "inactive voter," so Arthur's registration information, whether correct or not, was not subject to immediate removal from the central registry in 1994. Arthur was undisputedly shown in the Board's records as an active voter at that time. Second, Arthur

---

3. Title 26 O.S.Supp.1997 § 4–120.2 Provides, in material part:

A. No later than June 1, 1997, and every two (2) years thereafter, any voter for whom a first-class mailing from the county election board was returned during the previous twenty-four (24) months, any voter identified by the Secretary of the State Election Board as a potential duplicate and any registered voter who did not vote in any election conducted by a county election board

during the previous twenty-four (24) months and who has initiated no voter registration change during the previous twenty-four (24) months shall be sent an address confirmation mailing prescribed by the Secretary of the State Election Board and paid for by the state. Voters who do not respond to the confirmation mailing or whose mailing is returned as nonforwardable shall be designated as inactive sixty (60) days after the mailing. . . .

was allowed to vote in 1996 and thereafter. Finally, the 1994 version of § 4–120.2, upon which the Board relies, also requires that notice be given to any voter before that voter's registration is designated as inactive. Because the Board's records showed Arthur as an active voter in 1994, the Board was required by the statute to give Arthur notice before classifying him as an inactive voter. The Board's failure to classify Arthur's record as inactive, even if it should have done so, cannot now be used to deprive Arthur of his right to file for office.

## CONCLUSION

¶ 14 All of the mistakes upon which Arthur's opponents and the Board rely to support their claim that Arthur is not eligible to stand as a candidate for County Commissioner of District 3 were made by the Board. Arthur was innocent of any wrongdoing. He registered and voted at the place designated by the Board. He was allowed to vote in 1996 and thereafter. Arthur's opponents and the Board may not now take the position that the Board's errors may be used to deprive Arthur of his right to seek election as a County Commissioner. Under the undisputed facts of this record, Arthur is "a qualified elector," under subsection D of 19 O.S.Supp. 1995 § 131. The Board, therefore, abused its discretion and acted arbitrarily in holding otherwise.

¶ 15 The Board is directed to treat Arthur's February 19, 1998 registration in District 3 as the correction of a "clerical or administrative error" under 26 O.S.1991 § 4–115.1, which relates back to the time the erroneous record showing Arthur as a voter in District 1 was created. The Board is further ordered to restore Arthur's name to the ballot as a candidate for election to the office of District 3 Payne County Commissioner.

JURISDICTION ASSUMED WRIT OF MANDAMUS GRANTED.

¶ 16 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER and HARGRAVE, JJ., concur.

¶ 17 OPALA, Justice, concurring.

One's *status* as an elector can *neither* be destroyed *nor* impaired by a mistake of the government. No official agency's error will confer public rights upon a person who, at a maximum, may claim to be its incidental beneficiary. See in this connection *Burdick v. Independent School Dist.*, 1985 OK 49, 702 P.2d 48, 55–56.

¶ 18 SIMMS and WILSON, JJ., absent. 1