LENORA, Chief Justice.

Factual Background

On March 1, 1997, following allegations of misfeasance, Appellee Dora S. Young was removed by the Governing Council of the Sac and Fox Nation from her elected position of Principal Chief. After her removal, the Governing Council passed Resolution SF-GC-97-04, A Public Law Amending the Sac and Fox Election Act of 1985 (Election Ordinance), which included among its provisions a change to the requirements for eligibility of office. The relevant portion of this Resolution with respect to the issue before this Court is Section 401(j) (hereinafter referred to as 401(j) or 401), which provides that:
“A person who has been removed from an elected office by the General Council action shall be ineligible to file and/or be appointed to hold elective office, after all appeals have been exhausted.”
After appealing a Sac and Fox district court ruling in favor of the Governing Council and the Grievance Committee regarding her removal, Young timely appealed to the Sac and Fox Supreme Court. Upon an opinion issued on August 20, 1998, by the Supreme Court, Young was reinstated to her position as Principal Chief. Significantly, however, this Court entered no order extending Young’s term as Principal Chief beyond that to which she was initially elected.
Following this Court’s opinion of August 20, 1998, a regularly scheduled election for the office of Principal Chief was commenced. During this process, Young applied for and received, from both the district court and this Court, a writ directing that her name be placed upon the election ballot for the 1999 election, which at that time was scheduled for a primary election. See Summary Opinion, of June 22, 1999, Dora S. Young v. Election Board of the Sac and Fox Nation, SC-99-02 (Sac and Fox 1999) This Court declined, however, to reach the issue of the Constitutionality of Section 401(j).
After the 1999 primary election, Interve-nor George Thurman, a candidate in the primary election, filed a contest of the election with the Election Board of the Sac and Fox Nation, alleging misconduct on the part of Ms. Young and citing her inability to participate in the election under Section 401(j).
In August 1999, upon hearing Mr. Thurman’s protest, the Election Board ruled Ms. Young ineligible as a candidate for Principal Chief and ordered a new election without Ms. Young as a candidate. Ms. Young appealed the finding of the Election Board and the Election Board stayed the effect of its order while Ms. Young’s appeal was heard. After Ms. Young filed a petition in the district court of the Sac and Fox Nation against the Election Board, appealing the Election Board’s ruling, Mr. Thurman intervened in the suit and counterclaimed against Ms. Young. During the general election, Don Abney, the remaining candidate, defeated Ms. Young. In September 1999, over the objection of Mr. Thurman, Ms. Young moved to dismiss her lawsuit as moot.
Following an appeal to the Sac and Fox Supreme Court, this Court issued decisions in Cause Nos. SC-99-03 and SC-99-04 in which it determined that the district court, abused its discretion in dismissing *483 Ms, Young’s petition, as Intervenor Thurman had a counterclaim against Ms. Young. Pursuant to S.F.Code Title 6, Section 122(a)(2), the Supreme Court remanded the case to the trial court for a full consideration of the merits of the case consistent with this Court’s order.
After a full and complete hearing consistent with this Court’s order, the trial court entered exhaustive findings of fact and conclusions of law. Pertinent to this appeal are the following elicitations by the trial court as enumerated in its Order of January 12, 2001:
16. “This Court should adopt the administrative standard of clear and convincing evidence, this standard is a reasonable standard to apply in matters so important that an election is overturned.”
19. “... there is insufficient evidence to support a finding of electioneering and that there was no evidence to support a finding of a manifest and substantial effect to destroy the integrity of the election.”
25. “... 401(j) is an unconstitutional ordinance and should be declared null and void by this court.”
Based upon these determinations, the trial court reversed the decision of the Election Board, which had ordered that a new election be conducted omitting Young as a candidate. The trial court further found that insufficient evidence existed to taint the integrity of the 1999 election and, by implication, found the same to be a due and proper exercise of the tribal members’ will in electing Don Abney as the Principal Chief.
It should be noted that neither Interve-nor George Thurman nor Appellee Election Board has sought appeal of the trial court’s decision. Essentially, Young has sought review of the trial court’s decision in one respect only. Appellant’s brief makes the following statements with regard to the trial court’s judgments: As to the decision of the Election Board to conduct the election without Young’s name on ballot, “Totally Agree”; as to unconstitutionality of Section 401(j) of the Election Ordinance, “Totally Agree” with a statement that she had warned of this due to an improperly summoned Council; as to enjoining a runoff election for the office of Principal Chief, “Agree but the 1999 tribal elections, both Primary and General, were conducted under the 5/31/97 election ordinance, thereby rendering them invalid, certainly including the Principal Chief election.” Thus, Young concurs in the trial court’s holding regarding the validity of the election, except she contends that the unconstitutionality of 401(j) has tainted the entire election process.

Preliminary Matters

A myriad of motions and counter-motions have been filed by the parties. To the extent necessary to reach final adjudication, this Court overrules all said motions as de minimis violations of appellate procedures at best and as a part of the Court’s exercise of its inherent power to bring resolution and finality to this ongoing dispute which continues to cause confusion, turmoil, and endless litigation to the good citizens of the Sac and Fox Nation.
One preliminary matter does deserve comment. Appellant has asked for the recusal of three justices from hearing this matter. In a motion filed with this Court, she seeks to disqualify Justice Merz on the grounds that six years prior he had represented a party adverse to her in an unrelated civil action. She seeks to disqualify Justice McClelland because his daughter is a member of the Election Board. Finally, she seeks to disqualify former Justice Grant because he partici *484 pated in a decision adverse to her sister. These recitations are made to point out the absurd levels which such arguments may-reach when dealing with a small tribe that seeks self-governance. The only motion having any justiciable merit is the one pertaining to Justice McClelland.
It is accurate that Justice McClelland’s daughter is a member of the ten-member Election Board. The board is a party to this action—not the Justice’s daughter. For all this Court knows, that individual may be fully in accord with the Appellant’s position. The Court will not presume a conflict where no actual one is shown to exist.
Section 211(a) of Title 9 of the Sac and Fox Code states as follows:
No Justice shall hear any case when he has a direct financial, personal, or other interest in the outcome of such case or is related by blood or-marriage to one or both of the parties as: husband, wife, son, daughter, father, mother, brother, sister, grandfather, grandmother, or any other legal dependent. A Justice should attempt to prevent even the appearance of partiality or impropriety.
It is clear from a reading of this Section that no actual conflict exists. Rather, the only standard which may be applicable is that of the last sentence of subsection(a) of Section 211, “the appearance of partiality or impropriety.”
This Court is not unmindful that the confidence of the Nation must be of utmost consideration in matters pertaining to judicial integrity. But as evidenced by Appellant’s own motion, some will see bias in every scenario. Section 211 is not designed to afford litigants the opportunity to judge shop nor thwart the timely administration of justice. To the contrary, perception of impropriety must, of necessity, be tailored to the individual circumstance at issue as well as the realities of tribal life and custom. See Judicial Ethics Opinion 2000-5, 10 P.3d 899, 2000 OK JUD ETH 5 (Okla.Jud.Eth.2000)
The Sac and Fox Nation consists of approximately 3,100 members. Marriages within the tribe itself are certainly a reality. Thus, families and “relatives” oftentimes grow exponentially from this reality.
In addition, participation in tribal affairs should be encouraged, not discouraged. The fact that families may have one person involved in tribal agencies, boards, or committees should not be used to foreclose other members of the same family from participation. Following Appellant’s logic, her impartiality as a public official could be questioned in every matter related to her politically active family. Should all of Appellant’s relatives be foreclosed from public office because she herself participates? Clearly not.
In today’s tribal society, it is virtually impossible to “avoid the appearance of impropriety” on matters involving tribal politics. Justice McClelland’s daughter is one of ten members of the Election Board. No record has been offered to demonstrate even her vote on this issue. No financial or other benefit flows to his daughter depending upon the outcome of this action. Absent an actual conflict or evidence that an actual bias or prejudice exists, this Court declines to supercede Justice McClelland’s decision to participate in this cause. Though certainly not determinative of the legal issue presented by Appellant’s motion, it is noted that Justice McClelland concurs in this Court’s decision in overturning the Election Board’s actions.
JUSTICIABILITY
No party seeks review of the trial court’s findings concerning the purported election irregularities. This Court whole *485 heartedly concurs. The evidence presented on this issue was wholly insufficient to establish that the integrity of the election was destroyed. The Court further concurs that the proper standard of proof is clear and convincing. See Section 804 of Election Ordinance. Under even the most relaxed standards, the evidence in this case was woefully inadequate to cause a new election to be conducted.
Having reached this conclusion, however, the issue of the constitutionality of 401(j) and, for that matter, all of § 401 of the Election Ordinance remains. This issue was raised by the pleadings and, though Appellee contends it is not properly before this Court, we must disagree. This issue will continue to arise in all future elections if not addressed now. Ms. Young and all those similarly situated have a right to know if the Governing Council can change the Constitution insofar as the qualifications to run for elected office are concerned. Therefore, for these reasons as well as the mandate of Article V, Section 6, of the Constitution of the Sac and Fox Nation, this Court reviews this vital and important issue.
CONSTITUTIONALITY OF SECTION 401(j)
Article VI, Section 1, of the Sac and Fox Constitution provides as follows:
Any person elected to membership on the Business Committee shall not be less than 21 years of age and shall be a member of the Sac and Fox Nation. At the time of his election, he shall reside within the geographical boundaries of the State of Oklahoma. Any member of the Business Committee removing from the State of Oklahoma shall automatically forfeit Ms office.
The framers of the Constitution obviously intended that election to the Business Committee be opened to all tribal members who met the fundamental qualifications set forth in Article VI, Section 1. It is not unreasonable to believe that after decades of Native Americans being unrepresented and unheard in the legislative and executive branches of this country, participation in self-governance was a high priority. Therefore, affording expansive opportunity to participate was a statement not only of policy but also of tribal empowerment.
This approach to citizen empowerment is found at the very heart of tribal government. Article II, Section 1, of the Sac and Fox Constitution provides that the “Supreme Governing body of the Sac and Fox Nation shall be the Governing Council ....” in complete contrast to Section 401, but wholly consistent with citizen empowerment, the only membership requirement to the Governing Council is the attainment of 18 years of age by a tribal member. This open accessibility to government is found throughout the Constitution. See, for example, Article VII, Section 3 (requirements for election to Grievance Committee); Article VIII, Section 2 (purpose of General Council annual meetings is to discuss any matter pertaining to the Sac and Fox Nation); Article VIII, Section 2(a) (special meetings of Governing Council shall be called upon written request of 50 members); Article IX, Section 2 (60 members constitute a quorum of the Governing Council). It is for these reasons that this Court will closely scrutinize any legislation that has the effect of enlarging the qualifications to hold tribal office, which by its very nature restricts the rights of tribal members to exercise their free will in selecting tribal leaders.
The issue now becomes whether the General Council can enlarge upon the qualifications for membership to the Business Committee beyond those require *486 ments set forth in Article VI, Section 1. We hold it cannot.
Initially, the Court finds that Section 401 does, in fact, enlarge upon the qualifications for membership to the Business Committee. Though some Courts have distinguished between qualifications for candidacy as opposed to membership (see, for example, Hendrix v. State ex rel Oklahoma Election Board, 554 P.2d 770 (Okl.1976)), we fail to see how the difference is meaningful in this instance. As stated in the dissent to Hendrix, “A qualification for candidacy is a qualification for office.” Hendrix, supra, at 774, Doolin, et al., dissenting. This is particularly true in regard to the language of Section 401. One not meeting any of the “new” 11 qualifications (excepting only the age requirement) is not eligible to file or be appointed as a member of the Business Committee or Grievance Committee. If one cannot file for office, then one cannot be elected to office. If one cannot be elected nor appointed to office, one cannot serve in office. It is abundantly clear to this Court that the practical effect of Section 401 is to enlarge the qualifications to serve on the Business and Grievance Committees in direct contravention to the Constitution of the Nation. Such actions cannot be upheld, Cornell v. McAllister, 121 Okla. 285, 249 P. 959 (1926).
This Court is not unmindful of the provisions of Article VI, Section 5, which authorizes elections to be held “pursuant to an election ordinance prescribed by the Governing Council.” Thus, the General Council is clearly authorized to regulate the manner in which elections are conducted. However, the legal maxim “expressio unius est exclusio alterius”—the expression of one thing is the exclusion of another—seems particularly applicable. Had the framers of the Constitution intended for the General Council to be able to determine the qualifications for office through an election ordinance, this section would certainly have been the place to so state.
Further, the provisions of Article II, Section 1, the so-called “supreme governing” clause, do not grant the Governing Council the power or authority to pass an election ordinance, or any law for that matter, which violates the Constitution itself. The clear language of Article II, Section 1, limits the General Council to “powers herein delegated to it by this Constitution.” See also Article II, Section 3, which further clarifies that the General Council’s authority is exercised only “within its delegated powers.” To hold that the General Council has unlimited authority would render as a nullity the separation of powers clearly expressed in our Constitution. As to the judiciary, such an interpretation would abrogate entirely the provisions of Article V, Section 6, which authorizes the tribal courts to “review, in any case before them, the actions of the Governing Council” as well as the provision which authorizes the courts “to declare ... legislative or executive action unconstitutional and void.” To hold that the “supreme governing” clause of the Constitution empowers the General Council to pass laws contrary to the Constitution itself is repugnant to the fundamental democratic principles first espoused by Aristotle: that we are a government of laws, not men, Politics, Aristotle (Book III, Chapter 16).
An additional issue needs to be addressed by this Court. While we have held that Section 401(j) is unconstitutional, it is clear this holding will, by implication, affect other subsections of 401 which enlarge upon the constitutional qualifications to membership of the Business Committee and Grievance Committee. This does not, however, render all of the election ordi *487 nance unconstitutional. To that end, the Court finds that the manner and method of conducting elections are properly the subject of General Council action as set forth in Article VI, Section 5. Nothing in this opinion is intended to limit that authority except as specifically addressed herein.
Finally, Ms. Young has maintained that the election was tainted by the unconstitutional election ordinance. We find this contention without merit. Appellant was permitted to participate in the election and was defeated. She has subsequently run for the office of Principal Chief and finished fifth out of six candidates. She will not now be permitted to circumvent the will of the Nation through conjecture and speculation as to what should have occurred when this Court set aside her removal from office. Rather, this opinion recognizes and encourages the full, open, and unfettered exercise of the Nation’s free choice of leadership. While on the one hand this decision upholds Ms. Young’s eligibility to file for office, this Court will not indulge in legal supposition to undo the voters’ determination of their choice of leadership.
CONCLUSION
The standard of review for a question of law is de novo, and, accordingly, we use a non-deferential standard toward the findings of the trial court. Larson v. Tansy, 911 F.2d 392, 394 (10th Cir.1990); Salt Lake Tribune Publishing Co., et al. v. AT & T Corp., et al., 320 F.3d 1081, 1087 (10th Cir.2003). In the district court’s Findings and Final Order, it is correctly stated that the “Constitution is the Supreme Law of the Sac and Fox Nation.” Any attempt to restrict, constrain, or alter the effect of the Constitution must be done in accordance with the manner provided within the Constitution. It is clear that Section 401(j) is an attempt to limit the individuals who may hold an elected office. As such, Section 401(j) should be properly construed as an attempt to circumvent the Constitution. The procedure necessary to adopt an Amendment to the Constitution is outlined in Article XI of the Constitution. Those requirements are:
1) Proposal by majority vote of the Business Committee or a petition signed by 30% of members of the Governing Council;
2) Approval by the Secretary of the Interior;
3) Submission to a referendum vote of the adult members of the tribe; and
4) Ratification by a majority vote.
While the process for amending the Constitution and the requirements for participation in the amendment process may be seen as similar to the process provided in Article VIII, Section 2, for taking action on issues discussed in a Governing Council meeting, these processes are not interchangeable, and failure to abide by the mandatory amendment process prescribed in Article XI shall render any attempt to amend the Constitution under an alternate process null and void. Accordingly, the Supreme Court finds that the district court did not err in its findings regarding Section 401(j) of Resolution SF-GC-97-04 and its judgment is hereby AFFIRMED.
IT IS SO ORDERED.
Concurring: JOHN J. McCLELLAND, Associate Justice; TIM POSEY, Associate Justice.
Not participating: JIM MERZ, Associate Justice; MONTIE DEER, Associate Justice.